## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. LAZARO SUAREZ, and on behalf of the STATE OF CALIFORNIA, et al., | ) ) ) ) | |
| Plaintiff-Relator, | ) ) | Case No. 1:15-cv-08928 |
| v. | ) ) | Hon. Rebecca Pallmeyer |
| ABBVIE INC., | ) ) | |
| Defendant. | ) ) | |

## ANSWER TO COMPLAINT

AbbVie Inc. ("AbbVie") hereby answers Relator's Complaint and sets forth its affirmative defenses thereto. AbbVie denies each and every allegation of the Complaint not expressly and specifically admitted below. Any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the Complaint as a whole. To the extent any headings, footnotes, or unnumbered paragraphs of the Complaint are construed to be allegations, they are specifically denied.

To the extent the Complaint's allegations refer to the knowledge, conduct, or actions of others, AbbVie is generally without knowledge or information sufficient to form a belief about the truth of those allegations and, on that basis, denies them.

AbbVie reserves the right to amend any response in this Answer.

1. This case is about AbbVie's fraudulent scheme to induce and reward prescriptions of one of its most expensive drugs, Humira. To do so, AbbVie devised and employs a sophisticated—and very effective—kickback scheme.

**Answer**: AbbVie admits that Relator purports to allege violations of the False Claims Act and Anti-Kickback Statute, and that Relator's allegations concern Humira. AbbVie denies the remaining allegations in Paragraph 1.

2. In or about 2012, after nearly a decade on the market, the sales curve for Humira showed signs of flattening out. Faced with declining sales growth, AbbVie launched a new initiative—the "Ambassador Program"—to increase prescriptions for Humira and to ensure patients' continued refilling of those prescriptions, and thus increasing AbbVie's profits from the same.

**Answer**: AbbVie admits that the sale of Humira started in U.S. markets after its FDA approval at the end of 2002 and that the Ambassador Program was launched as a pilot program in 2012. AbbVie denies the remaining allegations in Paragraph 2.

3. Through the Ambassador Program, AbbVie provides free professional services to health care providers (HCPs) in exchange for their using Humira over another course of treatment. If, *and only if,* a doctor chooses to prescribe Humira, AbbVie makes an AbbVie representative (an "Ambassador", a Registered Nurse) available to perform time-consuming tasks that are otherwise fulfilled by the physician and their own professional staff.[1]

**Answer**: AbbVie admits that patients are eligible to enroll in the Ambassador Program if they opt into the program after their healthcare provider prescribes them Humira. AbbVie further admits that Ambassadors are Registered Nurses. AbbVie denies the remaining allegations in Paragraph 3.

4. AbbVie actively and vigorously promotes the Ambassador Program to physicians as a valuable and tangible economic benefit to their practice. AbbVie, through its Sales Representatives and Ambassadors, pitches Ambassadors to doctors as free "extensions of your office" available to take on administrative and patient work so the doctor doesn't have to. And, as detailed herein, they operate that way in practice.

**Answer**: AbbVie denies the allegations in Paragraph 4.

5. Doctors make money by seeing patients and billing for those visits. They do not bill (or get paid) for administrative work that results. When an AbbVie-paid nurse steps in to

---

[1] AbbVie has referred to the Ambassadors using various titles, including "Nurse Ambassador," "Nurse Educator," "Patient Ambassador," and "Humira Ambassador." Here, the position is referred to as the "Ambassador" position and the program as the "Ambassador Program."

perform administrative and patient care tasks for a physician (e.g., answering myriad patient questions and concerns, counseling patients on insurance coverage) that physician is freed up from those (non-billable) administrative tasks. As a result, the doctor sees more patients, bills for more patients, and boosts the bottom line. The impact is significant: one study estimates that the cost to physicians of interacting with health insurance plans alone, and of paying their staff to do the same, costs at least $68,859 per physician per year.

**Answer**: AbbVie admits that doctors treat patents and typically bill for their services. AbbVie

denies the remaining allegations in Paragraph 5.

6. The costs of patient support to the physician are particularly prevalent here, given that Humira (and Humira patients) typically require significant non-billable support due to chronic disease states, concerns about side effects, and the need to learn and manage self-injections, among other things. Because Ambassadors step in to provide extensive professional and patient management work (and provide valuable goods to patients that further ease burdens on prescribing health care professionals), they save physicians and their staff time and resources they would otherwise have to spend on necessary patient care, and administrative billing and insurance services, among other things. AbbVie confers independent value to health care providers, and does so for sales and marketing purposes.

**Answer**: AbbVie denies the allegations in Paragraph 7.

7. These benefits constitute kickbacks, making physicians more likely to prescribe Humira than another treatment that does not come with free professional staffing support. Offering such incentives to induce and reward prescriptions is illegal, and for good reason—rules prohibiting kickbacks protect patients from doctors whose medical decisions may be improperly clouded by financial considerations when they choose to prescribe a certain drug.

**Answer**: AbbVie denies the allegations in Paragraph 7.

8. The Ambassador Program was intentionally designed as a marketing program, and AbbVie further exacerbated the misconduct by creating a cover story for the Program. AbbVie claims the Ambassador program is about "patient education and support", which is not only a perversion of the meaning of education (as education does not mean a one-way outcome of taking Humira no matter what), but false. The Program is about sales. AbbVie not only fails to disclose, but it hides, the true facts.

**Answer**: AbbVie denies the allegations in Paragraph 8.

9. Notably, all of the Ambassadors' variable compensation depends on bottom-line, prescription-related metrics. Further, Nurse Ambassadors are instructed not to create a record of important aspects of their work, including: their time spent "dropping-by" doctor's offices to market the program, their collaboration with members to the Sales team to market the Program to doctors and target physician accounts, or any questions they have for their supervisors about their interactions with Humira patients.

**Answer**:  AbbVie denies the allegations in Paragraph 9.

10.     The Program has been a success in boosting AbbVie's bottom line.  At AbbVie's annual meetings in 2013 and 2014, for example, a VP-level company executive boasted to the Ambassadors that they had resurrected the otherwise-plateauing sales of Humira, attributing a sharp and specific rise in sales to the Program by displaying before-and-after graphs of Humira sales with and without Ambassadors on offer.

**Answer**:  AbbVie denies the allegations in Paragraph 10.

11.     The Medicaid Rebate Agreement with the United States Secretary of Health and Human Services, which is part of the Social Security Act 42 U.S.C. § 1396s, provides that drug products are only eligible for reimbursement if and when parties to the agreement are in compliance with applicable federal and state laws.  Because the Ambassador Program is an unlawful kickback to prescribing doctors who benefit financially from the Program, AbbVie is not in compliance with the Federal anti-kickback statute, contrary to its certifications.  Compliance with the anti-kickback statute ("AKS") is an implied precondition of reimbursement to providers submitting claims to the Government.[2]

**Answer**:  No response is required to Paragraph 11, which merely states a legal conclusion.

12.     All kickbacks present the harm of improper influence on clinical decisionmaking, and this case is no exception.  This case further presents related harms: the specter of patient decision-making and influence in the hands of a pharmaceutical company whose eye is on its brand, not on overall patient health.

**Answer**:  AbbVie admits that kickbacks may have the potential to influence clinical decision-

making.  AbbVie denies the remaining allegations in Paragraph 12.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which confers jurisdiction on this Court for actions brought pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729 and 3730.  Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).  This Court also has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

**Answer**:  AbbVie admits that Relator's purported claims arise under the Federal False Claims Act,

31 U.S.C. §§ 3729 and 3730.  AbbVie denies that this Court has subject matter jurisdiction over

Relator's purported claims as averred in its Second Affirmative Defense.

---

[2]     Evidence linking AbbVie's conduct to specific government reimbursements for Humira is included in § VIII.E, infra.

14.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because AbbVie is headquartered within this district and regularly conducts substantial business herein.

**Answer**:  AbbVie admits that venue is proper in this Court.

15.     There has been no public disclosure within the meaning of 31 U.S.C. § 3730(e)(4)(A) of the allegations Relator asserts herein.  Irrespective of any alleged public disclosure, Relator has direct and independent knowledge of the allegations herein, and provided that information to the government prior to bringing suit.

**Answer**:  AbbVie denies the allegations in Paragraph 15.

16.     Relator Lazaro Suarez is a resident of North Bay Village, Florida who worked for AbbVie via its sub-contractor Quintiles Transactional Holdings, Inc. as a "Nurse Educator" and "Patient Ambassador" (the formal names for the positions he held) from approximately March 23, 2013 to October 2014 in the South Florida area.[3]

**Answer**:   AbbVie admits that it subcontracts with Quintiles Transactional Holdings, Inc. ("Quintiles"), now IQVIA, in operating the Ambassador Program.  AbbVie further admits that Relator was employed as an Ambassador by Quintiles from approximately March 23, 2013 to October 2014 and that Relator worked in the South Florida area.  AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in this paragraph, and therefore denies them.

17.     Suarez was hired by Quintiles but reported to and worked with personnel at AbbVie, maintained an AbbVie email address, and worked exclusively in connection with AbbVie's drug Humira.

**Answer**:  AbbVie admits that Relator worked for Quintiles as an Ambassador, worked with and reported to both Quintiles and AbbVie personnel, and was provided with an AbbVie email address.  AbbVie also admits that, as an Ambassador, Relator was hired to provide patient support services only to patients who were prescribed Humira for an on-label indication.

18.     Suarez was successful during his tenure as an Ambassador, regularly earning recognition and awards for his role in the Program.  On at least a dozen occasions, he received a

---

[3]  When Relator was hired, his formal title was "Nurse Educator on 4620-Abbott-Patient Ambassador project."

financial reward (between $50-150) for his work, including four times during a single month. These rewards were related in practice to volume of Humira prescriptions.

**Answer**: AbbVie admits that Relator received financial rewards ranging from $50 to $150 for his

work as an Ambassador, including four such awards during November 2013, but denies that any

such rewards were related to Humira prescription volume. AbbVie further denies the remaining

allegations in Paragraph 18.

19.     Suarez was frequently held out as an example for his peers by his supervisors and, as detailed further below, was flown to train Ambassadors from throughout the country on numerous occasions. He regularly worked and communicated with Ambassador and sales teams in regions outside of Florida and beyond the southeastern United States, giving him first-hand experience with the nationwide implementation of the Ambassador Program and the scope of AbbVie's misconduct alleged herein.

**Answer**: AbbVie admits that Relator attended trainings and was a presenter at certain trainings.

AbbVie denies the remaining allegations in Paragraph 19.

20.     Suarez had approximately 15 years of clinical experience before going to work for AbbVie. He received a B.S. in nursing in 2000 from the University of Miami and has been a Registered Nurse since 1996.

**Answer**: AbbVie admits that Relator's resume and Quintiles employment application states that

he received a B.S. in nursing in 2000 from the University of Miami and that he was a Registered

Nurse at the time he served as an Ambassador. AbbVie admits that Relator's background report,

completed by a third-party, states that Relator received his nursing license in 1996. AbbVie lacks

knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 20

and therefore denies them.

21.     Since leaving his employment with AbbVie and Quintiles, Suarez continued to learn about, and kept abreast of, information about the conduct in this action via his own "MyHumira" membership and by ongoing communications with AbbVie and/or Quintiles personnel. Suarez has also observed how other companies have borrowed tactics from the unlawful promotion of Humira.

**Answer**: AbbVie denies that its promotion of Humira was unlawful. AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 21 and therefore denies them.

22. AbbVie, Inc., ("AbbVie") is a "research-based pharmaceutical company" incorporated in Delaware on April 10, 2012. AbbVie is headquartered and maintains its principal place of business in North Chicago, Illinois. AbbVie was formed when Abbott Laboratories separated into two companies at the end of 2012, and became its own company on January 1, 2013.

**Answer**: AbbVie admits the first two sentences of Paragraph 22 and that on January 1, 2013, Abbott completed the separation of its research-based pharmaceuticals business, which became AbbVie, a new independent biopharmaceutical company.

23. The False Claims Act imposes civil liability on any person who "knowingly presents, or causes to be presented" a false or fraudulent claim for payment to the United States. 31 U.S.C. § 3729(a)(1)(A). A claim is false under the FCA if the defendant supplied a "kickback" as an impetus for the underlying transaction. 42 U.S.C. § 1320a-7b(g).

**Answer**: AbbVie admits that Paragraph 23 quotes selected excerpts from the Federal False Claims Act, and refers to the Statute for a complete statement of its terms.

24. The Anti-Kickback Statute ("AKS") makes it illegal for individuals or entities to knowingly and willfully "offer[] or pay[] remuneration (including any kickback, bribe, or rebate)... to any person to induce such person ... to purchase, ... order, ... or recommend purchasing ... or ordering any good ... or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2).

**Answer**: AbbVie admits that Paragraph 24 quotes selected excerpts from the Anti-Kickback Statute, and refers to the Statute for a complete statement of its terms.

25. Violations of the AKS occur where pharmaceutical companies provide valuable products or services to procure use of their drugs. Indeed, if even *one purpose* of an offer of value is to pay kickbacks, that is sufficient under the law.

**Answer**: No response is required to Paragraph 25, which merely states a legal conclusion.

26. Compliance with the AKS, 42 U.S.C. § 1320a-7b(b), is a condition of payment under the federal health care programs. Whether or not a claim complies with the AKS is material to the government's decision to pay that claim, as a matter of law. *See Guilfoile* v. *Shields,* 913 F.3d 178, 190 (1st Cir. 2019). Thus, it does not matter if the medical care or item provided was also medically necessary; filing a kickback-tainted claim triggers liability.

**Answer**: No response is required to Paragraph 26, which merely states a legal conclusion.

27.     The Office of the Inspector General ("OIG") has explained that arrangements under which physicians are relieved of "financial obligations they would otherwise incur" pose a "*significant risk*" leading to an inference "that the remuneration may be in exchange for generating business," thus serving as a kickback inducing the prescription.  OIG Supplemental Compliance Program Guidance for Hospitals, 70 Fed. Reg. 4858-01, 4866.

**Answer**:  AbbVie admits that Paragraph 27 quotes selected excerpts of the OIG Supplemental Compliance Program Guidance for Hospitals, and refers to OIG Supplemental Compliance Program Guidance for Hospitals for a complete statement of its terms.

28.     As the OIG has expressly set forth

if goods or services provided by the [drug] manufacturer *eliminate an expense that the physician would have otherwise incurred (i.e., have independent value to the physician) ...* the arrangement may be problematic [under the AKS] if the arrangement is tied directly or indirectly to the generation of federal health care program business for the manufacturer.

OIG Compliance Program Guidance for Pharmaceutical Manufacturers, 68 FR 23731-01.

**Answer**:  AbbVie admits that Paragraph 28 quotes a selected excerpt of OIG Compliance Program Guidance for Pharmaceutical Manufacturers, and refers to OIG Compliance Program Guidance for Pharmaceutical Manufacturers for a complete statement of its terms.

29.     Moreover, under the anti-kickback statute, neither a legitimate purpose for an arrangement (e.g. physician education), nor a fair market value payment, will necessarily protect remuneration if there is also an illegal purpose (i.e. the purposeful inducement of business).  *Id.* at *23737.

**Answer**: No response is required to Paragraph 29, which merely states a legal conclusion.

30.     Similarly, OIG has, in several advisory opinions, identified "suspect characteristics" of arrangements among sellers, sales agents, and purchasers that "appear to be associated with an increased potential for program abuse."  Among those "suspect characteristics" are arrangements wherein:

a.     Compensation of the agent is based on percentage of sales;

b.     There is direct contact between the sales agent and physicians in a position to order items or services that are then paid for by a Federal health care program;

     c.      There is direct contact between the sales agent and Federal health care program beneficiaries;

     d.      The program uses sales agents who are health care professionals or persons in a similar position to exert undue influence on purchasers or patients.

*See* OIG Advisory Opinion 98-10 (August 31, 1998).

**Answer**: AbbVie admits that Paragraph 30 quotes and purports to characterize selected excerpts of OIG Advisory Opinion 98-10, and refers to OIG Advisory Opinion 98-10 for a complete statement of its terms.

31.     The OIG has further expressly warned against the risks pharmaceutical companies using medical professionals, like nurses, to promote its products. Specifically, OIG explains that risks of fraud and abuse are "compounded" where a "health care professional is involved in marketing activity." This type of marketing is "closely scrutinized under the anti-kickback statute because physicians and other health care professionals are in an exceptional position of public trust and thus may exert undue influence when recommending health care-related items or services." OIG Advisory Opinion 11-08 (June 14, 2011).

**Answer**: AbbVie admits that Paragraph 31 quotes selected excerpts of OIG Advisory Opinion 11-08, and refers to OIG Advisory Opinion 11-08 for a complete statement of its terms.

AbbVie denies the remaining allegations in Paragraph 31.

32.     Violation of the AKS is a felony punishable by fines and imprisonment and can also result in exclusion from participation in federal health care programs. 42 U.S.C. § 1320a-7b(b)(2) and 42 U.S.C. § 1320a-7(b)(7). State laws have similar prohibitions.

**Answer**: No response is required to Paragraph 32, which merely states a legal conclusion.

33.     Drug Manufacturers are prohibited from disseminating materials that are "false and misleading," such as those that only present favorable information when unfavorable information exists, that exclude mandatory information about the safety and efficacy of the drug use, or that present conclusions that "clearly cannot be supported by the results of the study." 21 C.F.R. § 99.101(a)(4).

**Answer**: AbbVie admits that Paragraph 33 quotes selected excerpts of 21 C.F.R. § 99.101(a)(4) (except that the regulation uses the phrase "false or misleading"), and refers to the regulation for a complete statement of its terms.

34. In fact, the FDA has promulgated extensive regulations on the content and form of prescription drug advertising. Advertisements "shall present a true statement of information in brief summary relating to … effectiveness." 21 C.F.R. 202.1(e)(6)(i).

**Answer**: AbbVie admits that the FDA has promulgated numerous regulations governing drug advertising. AbbVie denies that 21 C.F.R. 202.1(e)(6)(i) contains the quoted language; the quoted language appears in 21 C.F.R. 202.1(e)(1). AbbVie refers to 21 C.F.R. 212.1(e)(6)(i) for a complete statement of its terms.

35. FDA regulations also enumerate a number of tactics that can render advertising "false, lacking in fair balance, or otherwise misleading, or otherwise violative" of section 502(n) of the Act. 21 U.S.C. § 352. These requirements apply to industry sponsored or controlled activity whether it is educational or promotional. *See* Guidance for Industry: Industry-Supported Scientific and Educational Activities, 62 Fed. Reg. 64,093, 64,096-99 (1997). Regulations on prescription drug advertisements are found in 21 C.F.R. § 202.1, and further underscore the importance of true statements related to side effects.

**Answer**: AbbVie admits that Paragraph 35 quotes selected excerpts of the FDA's *Guidance for Industry: Industry-Supported Scientific and Educational Activities*, and refers to that guidance for a complete statement of its terms. AbbVie denies that 21 U.S.C. § 352 contains the quoted language. AbbVie admits that 21 C.F.R. § 202.1 contains regulations concerning prescription drug advertisements. AbbVie denies the remaining allegations in Paragraph 35.

36. There are also limits on benefits pharmaceutical companies may provide that subsidize or provide free drugs to Government Payor patients.

**Answer**: AbbVie admits that the provision of free or reduced cost drugs to Government Payor patients must comply with applicable laws and regulations.

37. If a patient is not financially needy, providing a free drug, which puts the patient on the path to continuing to take that drug, can be improper. Here, as shown below, AbbVie used its Ambassadors as a conduit to connect patients with free drugs, which was outside of the stated purpose of the program.

**Answer**: AbbVie admits that the provision of free or reduced cost drugs to Government Payor patients must comply with applicable laws and regulations. AbbVie denies the remaining allegations in Paragraph 37.

10

38.     Medicare Part D covers pharmacy-dispensed outpatient drugs including Humira. Part D prescription drug plans may exclude from coverage drugs that are not "reasonable and necessary" to the patient's treatment. 42 U.S.C. § 1395w-102(e)(3)(A). Specific coverage policies and decisions are generally made by sponsors who contract with CMS to provide such coverage and are responsible for making coverage determinations in accordance with statutes and regulations.

**Answer**: AbbVie admits that Medicare Part D provides coverage for prescription drugs, including

Humira, and that coverage determinations are generally made by Part D plan sponsors.  AbbVie

denies the remaining allegations in Paragraph 38, including the allegation that 42 U.S.C. § 1395w-

102(e)(3)(A) includes the quoted language.

39.     The pharmacies where prescriptions of Humira are filled agree to provide pharmaceuticals to Medicare Part D Plans ("PDPs") for Medicare patients that they serve, and the PDPs in turn reimburse these pharmacies for the cost of the drugs, plus a fixed dispensing fee meant to provide the pharmacies with a profit for providing services to Medicare patients.  PDPs (or MA-PDPs) are administered under contract with CMS by private entities such as Blue Cross Blue Shield plans, large commercial insurers such as Humana, and pharmacy benefit managers.

**Answer**:  AbbVie denies the first sentence of Paragraph 39.  AbbVie admits the remaining

allegations in Paragraph 39.

40.     Every time a beneficiary fills a prescription covered under Part D, PDPs must submit a summary called the prescription drug event, or PDE, record.  The PDE record contains drug cost and payment data that enable CMS to administer the Part D benefit.  CMS uses the PDE record to calculate reimbursement to PDPs for the cost of drugs, plus an amount meant to provide the PDPs with a profit for administering the PDP.

**Answer**:  Admitted.

41.     Medicaid is a joint Federal-State program that pays for medical assistance for individuals and families with low incomes and relatively few assets.  Although pharmacy coverage is an optional benefit under federal Medicaid law, all States currently provide coverage for outpatient prescription drugs to all categorically eligible individuals and most other enrollees within their Medicaid programs.

**Answer**:  Admitted.

42.     The state Medicaid programs adhere to federal guidelines.  Federal statutes and regulations restrict the drugs and drug uses that the Federal Government will pay for through its funding of state Medicaid programs.  Federal reimbursement for prescription drugs under the Medicaid program is limited to "covered outpatient drugs."  42 U.S.C. §§ 1396b, 1396r-8(k)(2)-(3).  Covered outpatient drugs are drugs that are used for "a medically accepted indication."  42

U.S.C. § 1396r-8(k)(3). A medically-accepted indication is listed in the labeling approved by the FDA, or that is included in one of the drug Compendia identified in the Medicaid statute. 42 U.S.C. § 1396r-8(k)(6).

**Answer**: AbbVie admits that Paragraph 42 quotes selected excerpts from 42 U.S.C. §1396r-8 and

refers to the statute for a complete statement of its terms.

43.    Providers who fill prescriptions for Medicaid enrollees submit their Medicaid claims for reimbursement by "batching" them daily, and submitting them electronically to the *Qui Tam* States. These claims include the claims for prescriptions of Humira that were falsely induced pursuant to the unlawful Ambassador Program.

**Answer**: AbbVie admits that claims for prescriptions filled for Medicaid enrollees are typically

submitted electronically. AbbVie denies the remaining allegations in Paragraph 43.

44.    As part of each electronic claim, the office and pharmacies affix their unique Medicaid provider identification numbers, which serve as electronic stamps indicating that, as Medicaid providers, they are in compliance with all applicable federal and state laws.

**Answer**: AbbVie admits that Medicaid providers typically affix their unique Medicaid provider

identification numbers to claims. AbbVie denies the remaining allegations in Paragraph 44.

45.    The offices and pharmacies are reimbursed on a monthly basis by the *Qui Tam* States for all approved claims.

**Answer**: AbbVie admits that Medicaid providers are typically reimbursed by state government

payors for approved claims. AbbVie lacks knowledge or information sufficient to admit or deny

the remaining allegations in Paragraph 45 and therefore denies them.

46.    Through the Federal Medical Assistance Percentage ("FMAP"), State Medicaid administrators obtain the Federal Government's share of the offices' and pharmacies' reimbursements by submitting a quarterly Form 64 to CMS. The funds made available to the state remain federal funds, in a Federal Reserve account, until they are drawn by the state and used to pay the offices' or pharmacies' claims. 42 C.F.R. § 430.30(d)(3), (4). Thus, claims submitted to state Medicaid agencies, including those in the *Qui Tam* States, are presented to the Federal Government within the meaning of the FCA.

**Answer**: AbbVie admits that, through FMPA, State Medicaid programs typically obtain federal

funds to pay a portion of approved claims submitted by providers for services provided and

prescription drugs dispensed to Medicaid beneficiaries, among other things. Abbie further admits

12

that claims submitted to state Medicaid agencies are presented to the Federal Government within the meaning of the FCA. AbbVie denies the remaining allegations in Paragraph 46.

47. The Federal Government also "approves," within the meaning of the False Claims Act, the claims submitted and paid through the Medicaid program. When a state presents its Form 64 (i.e., the quarterly report of actual expenditures) to CMS, the amounts of any fraudulent claims the state paid will be included in those reports. Based on the information in the reports, CMS determines and approves whether the claims that the state paid with federal funds were appropriate. If CMS determines that certain claims paid by the state were improper, CMS may recoup the amount of the erroneously expended funds by reducing the amount of money provided to the state during the next quarter.

**Answer**: AbbVie admits that, when a state presents its Form 64 to CMS, the amounts of any overpayments the state paid will be included in those reports. AbbVie denies the remaining allegations in Paragraph 47.

48. The Form 64 constitutes the United States' means for approving and paying the amount of federal funds expended by the state. To the extent these reports overstate the amount of federal funds to which the state was entitled because of false or fraudulent prescriptions, they constitute false records or statements caused to be made or used to get false claims paid and approved by the United States.

**Answer**: Admitted.

B. **Other Government Programs Similarly Cover Prescription Drug Costs.**

49. Other Government Programs adhere to similar rules in determining a drug's eligibility for reimbursement.

**Answer**: AbbVie admits that there are other government programs that provide reimbursement for prescription drugs. AbbVie denies the remaining allegations in Paragraph 49.

50. In addition to Medicaid and Medicare, the Federal Government reimburses a portion of the cost of prescription drugs under several other federal health care programs, such as CHAMPUS/TRICARE (administered by the Department of Defense); CHAMP VA (administered by the Department of Veterans Affairs); and The Federal Employee Health Benefit Program (administered by the Office of Personnel Management, for federal employees).

**Answer**: AbbVie admits that the federal government provides reimbursement for prescription drugs through CHAMPUS/TRICARE, which is administered by the Department of Defense,

CHAMP VA, which is administered by the Department of Veterans Affairs, and the Federal

Employee Health Benefit Program, which is administered by the Office of Personnel Management.

51.     Humira ("Human Monoclonal Antibody In Rheumatoid Arthritis") is the brand name for Adalimumab, a tumor necrosis factor (INF) inhibiting anti-inflammatory drug. It is a powerful and expensive drug that is a treatment option for a range of autoimmune conditions. Originally approved as a second-line treatment for Rheumatoid Arthritis, Humira is now indicated for Rheumatoid Arthritis, Psoriatic Arthritis, Ankylosing Spondylitis, Juvenile Idiopathic Arthritis, Crohn's Disease, Ulcerative Colitis, Plaque Psoriasis, Hidradenitis Suppurativa, and Uveitis.

**Answer**: AbbVie admits that Humira is the brand name for adalimumab, a tumor necrosis factor

alpha (TNF-a) inhibiting anti-inflammatory medication. AbbVie further admits that Humira is

approved by the U.S. Food and Drug Administration ("FDA") to treat the following conditions:

moderate to severe Rheumatoid Arthritis, Psoriatic Arthritis, Ankylosing Spondylitis, moderate to

severe Polyarticular Juvenile Idiopathic Arthritis, moderate to severe Crohn's Disease, moderate

to severe Pediatric Crohn's Disease, moderate to severe Ulcerative Colitis, moderate to severe

Plaque Psoriasis, moderate to severe Hidradenitis Suppurativa, and Non-Infectious Intermediate,

Posterior, and Panuveitis. AbbVie denies the remaining allegations in Paragraph 51.

52.     Humira was first approved 2002 has since grown to become the world's bestselling drug. Its sales account for the vast majority of AbbVie's total revenues.

**Answer**:  AbbVie admits that Humira first received approval from the FDA in 2002. AbbVie

further admits that Humira was the world's bestselling drug by revenue from 2015 to 2019 and

accounted for the majority of AbbVie's total revenues from 2013 to 2019. AbbVie denies the

remaining allegations in Paragraph 52.

53.     Humira must be injected subcutaneously. Once acclimated, patients generally need to be injected, or to inject themselves, approximately every two weeks. Typically, once a patient starts on Humira, they will be advised to stay on it indefinitely. Indeed, patients are warned that if they abruptly stop treatment with Humira (rather than tapering off slowly) they may have a "severe" reaction or "flare up" of their condition after which they may not respond to Humira or other similar treatment.

**Answer**:  AbbVie admits that Humira must be injected subcutaneously and administered according to prescribed dosing protocols that typically require regular injections.  AbbVie also admits that Humira may lose efficacy if treatment is stopped suddenly or not administered as prescribed. AbbVie denies the remaining allegations in Paragraph 53.

54.     Humira carries a black box warning for serious and life-threatening side effects, including lymphoma, tuberculosis, and other infections.

**Answer**:  AbbVie admits that Humira's FDA-approved package insert contains a black-box warning that discloses risks of lymphoma, tuberculosis, and certain other infections, and refers to Humira's FDA-approved package insert for a complete statement of its contents.

55.     Doctors and their staff are heavily burdened by administrative work.  This work keeps doctors from seeing additional patients, which also drives payment.

**Answer**:  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 55 and therefore denies them.

56.     In a study conducted by a general medicine practice with five physicians, the doctors reported receiving an average of 23.7 calls from patients *per day*, with questions ranging from acute medical issues, administrative questions (e.g. prior authorization for insurance), and questions about test results and clinical follow up, among other things.[4]  In addition, the physicians received an average of 16.8 patient emails per physician per day addressing similar topics.[5] Following that study, the practice "hired additional front-desk staff and medical assistants to handle the increased tasks associated with the comprehensive management of chronic diseases"— thereby freeing up more physician time to see patients.[6]

**Answer**:  AbbVie admits that the article "What's Keeping Us So Busy in Primary Care? A Snapshot from One Practice" states that "[t]elephone calls that were determined to be of sufficient clinical import to engage a physician averaged 23.7 per physician per day" and states that these

---

[4]     Baron, Richard J., "What's Keeping Us So Busy in Primary Care? A Snapshot from One Practice." *New England Journal of Medicine,* 362; 12 April 29, 2010.

[5]     *Id.*

[6]     *Id.*

calls addressed topics such as acute medical issues, administrative questions, and test results.

AbbVie further admits that the article states that "[p]hysicians average 16.8 e-mails per day"

discussing similar topics. AbbVie further admits that Paragraph 56 also quotes a selected excerpt

of that article and refers to that article for a complete statement of its contents.

57.    Time spent on such administrative work is generally not reimbursed by payers, but seeing patients is.[7] One study estimated that physicians spend up to 20% of their workday on these tasks.[8]

**Answer**:  AbbVie admits that the article "Patient Care Outside of Office Visits: A Primary Care

Physician Time Study" states that "[p]hysicians spent 20% of their workday performing [activities

outside of office visits]" and refers to that article for a complete statement of its contents.  AbbVie

denies the remaining allegations in Paragraph 57.

58.    Physician practices must interact with numerous health plans in the U.S. multipayer system, each with their own requirements and procedures.  Moreover, interactions increase with plans' attempts to "manage care," such as requiring prior authorizations for many specialist, imaging, and hospital services.  Each health plan offers many different insurance products to consumers, and each may have its own formulary (or list of approved drugs); prior authorization requirements; and rules for billing, submitting claims, and adjudication.[9]

**Answer**:  AbbVie admits that the article "US Physician Practices Versus Canadians: Spending

Nearly Four Times As Much Money Interacting with Payers" states:

> Physician practices in the United States must interact with many health plans in the US multi-payer system.  Moreover, interactions increase with plans' attempts to "manage care," such as requiring prior authorizations for many specialist, imaging, and hospital services.  Each health plan offers many different insurance products to consumers, and each may have its own formulary (or list of approved drugs); prior authorization requirements; and rules for billing, submitting claims, and adjudication.

---

[7]    *See* Chen, Melinda A. et. al. "Patient Care Outside of Office Visits: A Primary Care Physician Time Study." *Society of General Internal Medicine,* September 2, 2010.

[8]    *Id.*

[9]    Morra, Dante et al. "US Physician Pratices Versus Canadians: Spending Nearly Four Times As Much Money Interacting with Payers." *Health Affairs,* August 2011. *Available at* https://www.healthaffairs.org/doi/full/10.1377/hlthaff.2010.0893.

AbbVie refers to that article for a complete statement of its contents.

59.     Within this framework, Humira is particularly challenging for doctors as it is an expensive drug that requires a great deal of non-billable support from the doctor and their staff. For that reason, many physicians were historically disinclined to prescribe it. This all changed when AbbVie took these considerations off the table by eliminating the need for the doctor's and their staff to do this work, instead providing a Registered Nurse to do it for them.

**Answer**:   AbbVie denies the allegations in Paragraph 59.

60.     Humira prescribers work in Rheumatology, Gastroenterology, and Dermatology practices. These practices typically employ nurses and professional staff to provide general advice and counseling to patients and assistance with insurance and billing for prescriptions. As to Humira, for example, professional office staff counsel patients on, among other things: how to self-inject, help them with insurance coverage and insurance forms (including, where applicable, obtaining prior authorizations from their insurer), navigate specialty pharmacy and prior authorization requirements, answer patient questions, and conduct follow-ups to ensure patient adherence to prescribed medication regimes.

**Answer**:   AbbVie admits that Humira is prescribed by healthcare providers, some of whom specialize in rheumatology, gastroenterology, and dermatology. AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 84, and therefore denies them.

61.     These services are time consuming and resource intensive. The staff members that perform them are professionals that command substantial salaries and benefits and are often overworked.

**Answer**:   AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 61 and therefore denies them.

62.     The financial impact of excessive administrative complexity on physician organizations can be dramatic. In one study of a typical ten-physician practice, it was estimated that excessive administrative complexity cost the practice more than $250,000 per year. Another physician organization saw 32 percent growth in the staffing of its professional billing office over

a six-year period, to 250 full-time equivalents. The expansion was needed to help deal with administrative complexity and was independent of the practice's programmatic growth.[10]

**Answer**: AbbVie admits that Paragraph 62 accurately quotes the article "Saving Billions Of Dollars—And Physicians' Time—By Streamlining Billing Practices." AbbVie refers to that article for a complete statement of its contents.

63. Even just *one* aspect of these services—dealing directly with insurance companies—is a significant cost to the physician. In a May 2009 survey of physicians and practice administrators published in *Health Affairs,* physicians themselves reported spending forty-three minutes *per day* (nearly three weeks per year) interacting with health plans on behalf of patients— including looking at prior authorization requirements, pharmaceutical formularies, claims, credentialing, contracting and data on quality. For professional staff (i.e. Registered Nurses, Medical Assistants, and Licensed Practical Nurses) these numbers are even higher—spending 3.8 hours per physician per day interacting with health plans, and clerical staff devoting up to 7.2 hours per physician per day.[11]

**Answer**: AbbVie admits that the article "What Does It Cost Physician Practices to Interact With Health Insurance Plans?" references a study where, "[o]n average, physicians reported spending forty-three minutes per workday…on interactions with health plans." AbbVie further admits that that article states that "[c]lerical staff spent 7.2 hours per physician per day" and that professional staff spent 3.8 hours "per physician per day interacting with health plans." AbbVie refers to the article for a complete statement of its contents. AbbVie denies the remaining allegations in Paragraph 63.

---

[10]   Blanchfield, Bonnie et al. "Saving Billions Of Dollars—And Physicians' Time—By Streamlining Billing Practices." *Health Affairs,* June 2010. *Available at* https://www.healthaffairs.org/doi/full/10.1377/hlthaff.2009.0075.

[11]   *Casalino et. al.,* "What Does It Cost Physician Practices to Interact With Health Insurance Plans?" *Health Affairs,* May 14, 2009, available at: https://www.healthaffairs.Org/doi/10.1377/hlthaff.28.4.w533

64.     On average, this works out to a cost of at least $68,859 per physician per year (in 2009 dollars) for interacting with health plans alone.  For medical specialist practices, the amount increases to $78,913 per physician per year.[12]

**Answer**:  AbbVie denies that the article "What Does It Cost Physician Practices to Interact With Health Insurance Plans?" states that practices spent $68,859 per physician per year interacting with health plans.  AbbVie admits that the article states that medical specialty practices spent $78,913 per physician per year interacting with health plans.  AbbVie refers to the article for a complete and accurate statement of its contents.

65.     Recognizing the challenges to increasing Humira prescriptions (and profits), and eyeing physicians' resource needs that stood in the way, AbbVie developed and deployed a marketing scheme called the Ambassador Program.

**Answer**:  AbbVie denies the allegations in Paragraph 65.

66.     Since in or about early 2012, AbbVie (originally as Abbott) partnered with Quintiles Transactional Holdings, Inc.—now IQVIA—to launch the Ambassador Program around the time the sales curve for Humira appeared to be flattening.  The purpose of this nationwide marketing strategy was to bolster Humira's volume and market share, protect it from encroachment by competitors and bio-similars (including, for example, Enbrel), and to maximize revenues and profits.

**Answer**:    AbbVie admits that it contracted with Quintiles Transactional Holdings, Inc. ("Quintiles") in or about early 2012 to launch the Ambassador Program.  AbbVie further admits that Quintiles is now called IQVIA.  AbbVie denies the remaining allegations in Paragraph 66.

67.     The Program, detailed below, was designed to overcome resistance to prescribing Humira and reward physicians for doing so.  It was tremendously successful in these efforts— with a commensurate boost to AbbVie's bottom line.  Indeed, following an initial boost to its profits from Humira due to the Ambassador Program, AbbVie acted quickly to expand the Program (and its results) into territories throughout the United States.  As of May 2014, the company hit a self-described milestone: a senior executive wrote to the entire Ambassador team that 10,000 patients were supported by an Ambassador.  That same year, Humira was the highest-grossing drug in the world, achieving global net sales of $12.5 billion, $6.5 billion of which was paid in the U.S. alone.  The success has only continued with the expansion of the Program across and throughout the United States—U.S. sales of Humira from 2015 to present totaled $55.8 billion.

---

[12]    *Id.*

**Answer**: AbbVie admits that in May 2014, AbbVie's Head of Cross-Franchise & Commercial Initiatives wrote to the Humira Ambassador Team that 10,000 patients were supported by an Ambassador. AbbVie further admits that Humira was the highest-grossing drug in the world in 2014 with worldwide net sales of approximately $12.5 billion in 2014, of which approximately $6.5 billion was in the United States. AbbVie denies the remaining allegations in Paragraph 67.

68. The Ambassador Program provides independent value to doctors who prescribe Humira because it saves them time and money they (or their staff) would otherwise have to spend on patient care and administration. Through the Program, at no cost and considerable gain to the physician's office, AbbVie nurses provide valuable professional services including patient care (including regular in-person visits and communications with patients in response to questions about their treatment and disease states), pharmacy and insurance authorization assistance, open enrollment resources, paperwork help, advice on insurance products, and other services and support.

**Answer**: AbbVie admits that it offers patients who have been prescribed Humira by their healthcare provider for an on-label indication the opportunity to enroll in a free patient support program that, among other things, employs registered nurses called "Nurse Ambassadors." AbbVie admits that Ambassadors can provide Humira patients who elect to enroll in the program with educational resources relating to Humira, including answering questions about insurance and ways to save on Humira. AbbVie denies the remaining allegations in Paragraph 68.

69. In practice, this includes hours-long visits to patients in their homes, and addressing myriad patient questions and concerns that would otherwise be directed to the physician's office (including those having nothing to do with Humira or the diagnosis). For example, Relator Suarez frequently worked with patients to address their computer and other technology issues in fulfilling their prescriptions or dealing with their doctors' offices and insurance companies. Patients, with access to a Nurse directly in their own home, also frequently used the opportunity to raise questions and concerns about their medical histories and other health issues (indeed, a review of non-Humira related medical history was part of the Ambassadors' jobs). And, notwithstanding a purported policy to direct medical treatment back to the physician, in the moment, Nurse Ambassadors would often draw on their past clinical work to assuage patient questions and concerns, thereby preventing yet another call to the doctor. This was the entirely foreseeable result of the required application of the program, where general patient health was a standard part of the intake.

**Answer**: AbbVie admits that Nurse Ambassadors can visit the homes of Humira patients who elect to enroll in the program after being prescribed Humira by their doctor. AbbVie lacks knowledge

or information sufficient to admit or deny the second sentence of Paragraph 69 and therefore denies

it.  AbbVie denies the remaining allegations in Paragraph 69.

70.     Suarez also frequently served as a translator for Spanish-speaking patients, including calling Medicare with them to translate and verify their coverage for the drug under their current Medicare plan, and assisting in their switching to another plan if needed.

**Answer**:  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

Paragraph 70 and therefore denies them.

71.     Also as part of his patient visits, Suarez and other Ambassadors were provided with Humira travel kits (akin to a lunch box or cooler) that could be used, among other things, to keep the drug cool when away from refrigerator access.  This resource and the direction from the Ambassador provided along with it, stood in place of numerous calls to doctor's offices about, for example: (1) how to travel with Humira; (2) the appropriate temperature to maintain the drug; (3) whether or not to skip a Humira dose; (4) related concerns about diagnoses and disease states.

**Answer**:  AbbVie admits that Ambassadors were provided with Humira travel kits which could

be given to patients to assist patients in keeping Humira at the required temperature.  AbbVie

denies the remaining allegations in Paragraph 71.

72.     Without an Ambassador, these types of questions (and many others)—and the time required to answer them—fall to the physician and their staff.  Having AbbVie nurses step in to do it for them offers tremendous value and time-saving to physicians, thereby incentivizing them to prescribe Humira.  If given the choice between two medications, one which comes with free nurses and administrative staff and another that requires the provider to pay professional salaries, the provider cannot but help factor the substantial nursing kickback into their prescribing calculus.

**Answer**:  AbbVie denies the allegations in Paragraph 72.

73.     A typical Ambassador conducts about 20 patient visits *a week*.  As discrete nursing visits, the collective value of these is spent working with physician offices and doctors, and other functions, and traveling.

**Answer**:  AbbVie denies the allegations in Paragraph 73.

74.     When visiting doctor's offices apart from patient visits, Ambassadors reinforce the benefits of the Program to the physician and their office staff, and providing information and training about the resources available through the Ambassador Program.  Relator Suarez recalls discussing with doctor's and their staff, on numerous occasions, topics including: specific follow up questions about individual patients he had visited, information about the number of patients he was able to see and service through the Program and the services offered, and information about

providing free or reduced cost Humira to low income patients through the AbbVie Patient Assistance Foundation.

**Answer**: AbbVie lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 74 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 74.

75. Doctors recognize the benefits of the Ambassador Program to their advantage beyond the direct relief of their staffing needs and costs, leveraging the Program to their marketing advantage as well. For example, in the competitive South Florida dermatology market for wealthy older patients, physicians came to brag about the program and imply it was a service the doctor had arranged for his or her own patients. Hollywood Dermatology had a "Concierge" service and represented the Ambassador Program as a benefit to *their* patients as needed. One high-prescribing doctor in that practice was Dr. Eduardo Weiss.

**Answer**: AbbVie lacks knowledge or information sufficient to admit or deny the allegations in the second, third, and fourth sentences of Paragraph 75 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 75.

76. Other examples of high-prescribing dermatologists who actively have touted the Ambassador Program in marketing their practices, and worked especially closely with Ambassadors, included Dr. Francisco Kerdel (a company speaker and affiliate of among the highest prescribing, if not the highest prescribing, dermatology offices in South Florida, Florida Academic Dermatology Center), Dr. Tory Sullivan, and Drs. Pedrozo and Weiss.

**Answer**: AbbVie admits that Dr. Francisco Kerdel engaged in speaking engagements on behalf of AbbVie and is an affiliate of Academic Dermatology Center. AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 76 and therefore denies them.

77. Although it is publicly represented as a "patient education" initiative, the Nurse Ambassador program is actually designed, and functions, to protect and boost AbbVie's profits from the prescription and sale of Humira.

**Answer**: AbbVie denies the allegations in Paragraph 77.

78. In an email from Elaine Sorg, Vice President of U.S Immunology, Ms. Sorg urged Ambassadors that "patient enrollment in this program is *critical* to the long term success of HUMIRA" and noted that she "look[ed] forward to seeing enrollment numbers that exceed our expectations." (Emphasis added).

**Answer**: AbbVie admits that Paragraph 78 quotes selected excerpts from an email sent by Elaine

Sorg, and refers to that email for a complete statement of its contents.

79.     AbbVie Senior Management routinely applied pressure to increase the reach of the Ambassador Program.  For example, during a June 17, 2013 Ambassador team meeting, it was emphasized that Senior Management wanted "a solid 2-3 enrollments per week with a goal of 4-5 new enrollments by Q4".  At the time, the stated goal of the program was to ensure that 80% of new Humira patients across the country received a face to face meeting and injection training from an Ambassador.

**Answer**: AbbVie denies the allegations in the first sentence Paragraph 79.  AbbVie lacks

knowledge or information sufficient to admit or deny the remaining allegations in this paragraph,

and therefore denies them.

80.     AbbVie's own metrics used to evaluate the Program substantiate its intended purpose to induce and reward Humira prescriptions.  AbbVie tracks the success of the Ambassador program by conducting "return-on-investment" calculations and analyses, weighing the costs of the program (and, likely, the legal risks) against the huge profits generated by Humira's expanding market share and volume.  Such internal "ROI" analysis (which is not publicized or shared with the investing public, despite its positive results) is a classic "red flag" demonstrating that the Program's primary purpose is financial, not scientific or medical.

**Answer**: AbbVie denies the allegations in Paragraph 80.

81.     AbbVie also tracks the increased prescriptions that result from the Program. Tellingly, as reflected on the Field Coaching Logs, AbbVie evaluates Ambassadors' performance on prescription-based metrics: (a) number of patients enrolled, (b) number of unique live visits, (c) percent of patients with the drug, (d) number of offices launched, and (e) total number of offices enrolling, rewarding additional accounts won, and prescriptions induced, by the Ambassador. These metrics are all unrelated to patient education, the ostensible purpose of the program.

**Answer**: AbbVie denies the allegations in Paragraph 81.

82.     Tellingly, Ambassadors' compensation is tied to prescription metrics (and thus, not related to education).  In fact, *all* of the Ambassadors' variable compensation depends on these bottom-line, prescription-related metrics.  Ambassadors can earn up to approximately 20% of their overall compensation in quarterly bonuses that are entirely dependent on the number and/or percent of offices that launch the program and/or patients who take Humira.  Similarly, AbbVie managers and executives with responsibility over the program have significant financial incentives tied to meeting or exceeding prescription and market-share quotas.

**Answer**: AbbVie denies the allegations in Paragraph 82.

83.     These core metrics for evaluating and compensating Ambassadors reflect how senior personnel evaluate the Ambassador Program as a whole and determine the resources to put into it.  Managers have stressed to Ambassadors that the prescription-based metrics demonstrate the value of the Ambassador Program to senior level AbbVie personnel, especially in the high adherence rate of patients who are prescribed Humira.  Managers in the Ambassador program report only the core business-related metrics to AbbVie decision-makers.

**Answer**:  AbbVie denies the allegations in Paragraph 83.

84.     Importantly, that patients obtain assistance in learning to inject themselves (something they would otherwise, if they needed the help, be done in connection with the doctors' offices) does not alter the fact that the marketing program called the Ambassador program was a kickback.  The kickbacks provide independent value to doctors in eliminating expenses they would otherwise incur, and are thus unlawful.

**Answer**:  AbbVie denies the allegations in Paragraph 84.

85.     AbbVie has ensured that Ambassadors maintain active, various contacts with doctors' offices in which they discuss the Ambassador Program and provide additional services to doctors' offices even beyond the substantial time they spend with patients.  The contacts further the initial pitch that the Ambassador is an extension of the doctor's office.

**Answer**:  AbbVie denies the allegations in Paragraph 85.

86.     AbbVie is well aware, as reflected in its Ambassador Guidelines, that Ambassadors may not function as sales representatives if they are not providing fair and balanced information regarding side effects (which is legally required of sales representatives).  Consequently, the Guidelines direct that Ambassadors "will be restricted from being part of recurring call plan visits to doctors because they are not part of AbbVie's sales force and any extensive interactions could have HR and other implications."

**Answer**:  AbbVie admits that Ambassadors do not function as sales representatives but denies that

Paragraph 86 accurately quotes selected excerpts from any version of the Ambassador Guidelines

in effect from 2012 to present, and refers to those Guidelines for a complete and accurate statement

of their terms.  AbbVie denies the remaining allegations in Paragraph 86.

87.     Nevertheless, Ambassadors work with, and report to, Sales team personnel as well as to managers in the Ambassador department.

**Answer**:  AbbVie denies the allegations in Paragraph 87.

88.     Ambassadors play a crucial role in interfacing with physicians and marketing their free and valuable professional services (and thereby influencing prescription decisions).  AbbVie uses the Ambassador Program as a powerful tool to access doctors and other prescribers

(particularly those who have previously refused or resisted the efforts of AbbVie sales representatives to pay them detailing visits to promote AbbVie products). Ambassadors are often able to get a foot in the door with a physician's office where a sales representative could not.

**Answer**: AbbVie denies the allegations in Paragraph 88.

89.     Through a variety of in-person meetings and tactics and a collaboration of the Sales and Ambassador teams, AbbVie presents the Ambassador Program to prescribers as a value add to the practice—a free "extension" of their otherwise paid-for resources. Members of the Sales Team that Relator worked with, including John Little, regularly pitched the Program to doctors using these terms.

**Answer**: AbbVie denies the allegations in Paragraph 89.

90.     An early job description for the position of Ambassador Manager described the program as follows, with express reference to the program's connection to AbbVie's "commercial organization": "Interact[ing] closely *with commercial organization to drive increased brand performance* and retention on the HUMIRA brand by ensuring 'Best in Class' support and education regarding myHUMIRA platform services" (emphasis added).

**Answer**: AbbVie admits that Paragraph 90 quotes selected excerpts from a job description for the

position of Humira Ambassador Manager, and refers to that job description for a complete

statement of its contents.

91.     Later, as of March 2013, AbbVie, via Quintiles, hastily changed the description of the program to an "educational based program designed as a resource for patients living with auto-immune diseases that have been prescribed specific medications. Patient Ambassadors provide education about specific disease treatments, and resources to help patients better begin and manage their disease state and resources associated with their prescribed medication. Patient Ambassadors are responsible for participating in one-on-one communications with patients as well as appropriate medical professionals within the associated treatment process. Since the program is strictly educational based, Patient Ambassadors, do not provide medical advice or work clinically within this role." This was false.

**Answer**: AbbVie denies the allegations in Paragraph 91.

92.     To avoid detection of real marketing nature of the program, Ambassadors have been cautioned about their written communications with the Sales team, explicitly directed to use "limited" communications over email with sales. Indeed, in a call agenda for May 20, 2013 team call, one agenda item, "COMMUNICATION WITH SALES" cautioned Ambassadors to have "CAREFUL CAREFUL COMMUNICATION (phone vs. email) with sales colleagues." Further they are instructed to refrain from using the word "Humira" when leaving a message. However, even with communications discouraged so as not to leave a paper trail, Ambassadors' coordination with the sales team is a key part of the strategy to identify and target prescribers, and key evidence of the true goals of the Program.

**Answer**:  AbbVie denies the allegations in Paragraph 92.

93.     In the early years of the Program, and until some point in 2013, Ambassadors regularly accompanied sales representatives on sales calls to physicians' offices to pitch the Ambassador Program.  This arrangement begs the key question of why representatives of a patient *education* program would coordinate with sales representatives.  The explanation, of course, is that the program was designed to increase prescription volume, not educate patients.

**Answer**:  AbbVie denies the allegations in Paragraph 93.

94.     The sales pitch to doctors has been consistent, however, regardless of whether the Ambassadors have personally joined the sales representatives on their call visits.  Suarez attended periodic meetings with the sales team and the local District Manager to discuss business planning and sales calls.  Frequently, sales representatives told Relator to expect a call from a particular doctor or his or her office based on the sales representative's having just pitched the Ambassador Program and its benefits to the doctor.  In this calls, Suarez was expected to affirm the pitch and close the deal with the physician.

**Answer**:  AbbVie lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in the second and third sentences of Paragraph 94 and therefore denies them.  AbbVie

denies the remaining allegations in Paragraph 94.

95.     In the marketing pitch, sales representatives, including John Little, among others, detail exactly how the Ambassadors save the doctors and their staff substantial time: "we will take that [patient] call," "we will take that [patient's] insurance question," "doctor, we will take your concerns about [calls to the office, dealing with billing, disposal] *off the table*."  And to doctors, time is money.

**Answer**:  AbbVie denies the allegations in Paragraph 95.

96.     After touting the program, the sales representative (at times accompanied by the Ambassador) "closes" with the question of whether the doctor would write more Humira if the time and service related concerns were "off the table."

**Answer**:  AbbVie denies the allegations in Paragraph 96.

97.     Doctors responded positively to the marketing pitch and opted to prescribe Humira as a result of the Ambassador Program.  Among the doctors who responded positively to the marketing pitch and opted to prescribe Humira as a result of the Ambassador Program was Dr. Avelino A. Guiribitey.  Among those who dramatically increased their prescriptions were Dr. Alejandro Pedrozo and other doctors identified herein.

**Answer**:  AbbVie denies the allegations in Paragraph 97.

98.     Based on their knowledge of which providers are generally high-prescribers of injectable biologics, senior members of AbbVie's sales organization identify key accounts that might benefit from receiving visits from Ambassadors.

**Answer**: AbbVie denies the allegations in Paragraph 98.

99.     High-prescribers are the key target of additional marketing efforts for the Program. Ambassadors attend "launch" or "re-launch" events where they meet with doctors and their staff once a doctor has joined the Ambassador Program, or re-joined it. For example, Relator attended a re-launch meeting with Dr. Robert Sarro's office. Dr. Sarro and his assistant had been persuaded that the Ambassador Program would "make their lives easier."

**Answer**: AbbVie lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 99 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 99.

100.     Such visits are a successful marketing strategy. For example, in or about August 2014, Relator Suarez attended a lunch with a physician where he described the scope of the services available through the Ambassador program, as well as the amount of time Ambassadors have available for each patient. Following that lunch, AbbVie's Senior Immunology Specialist reported that the lunch was "extremely effective" and that they were "looking forward to continuing this optimization strategy in our top offices." This strategy, of course, was tied to marketing Ambassadors to high prescribers.

**Answer**: AbbVie admits an AbbVie Senior Immunology Specialist sent an email on August 7, 2014 regarding a lunch Relator had with a healthcare provider, and refers to that email for a complete statement of its contents. AbbVie denies the remaining allegations in Paragraph 100.

101.     Key accounts also receive targeted, less formal visits and office drop-bys from Ambassadors to market the Program. Suarez had at least four such calls in August 2014 alone, in which he described the Ambassador Program and touted its benefits to doctors and their staff.

**Answer**: AbbVie lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 101 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 101.

102.     These visits are expressly for the purpose of marketing. For example, in a May 2013 Ambassador team call, one agenda item encouraged Ambassadors to drop off brochures at a physicians' office because it "gives you another reason to go into the office" which is effective because the Ambassador himself is the "best brochure" for the Program.

**Answer**:  AbbVie denies the allegations in Paragraph 102.

103.    Ambassadors also visit, or communicate with, doctors' offices to respond to specific questions about specific patients, including if the patient has routed an administrative question to the doctor's office rather than to the Ambassador.

**Answer**:  AbbVie denies the allegations in Paragraph 103.

104.    Managers warn Ambassadors not to formally record all the time they spend with doctors, including these marketing efforts.  Ambassadors typically enter their daily activities on the CRM (Customer Relations) section of the Sales Force database (e.g., first live visit, pre- and post-calls to patients after their first few injections).  However, on the informal monthly ride-alongs, managers tell Ambassadors that if they are only doing a drop off of materials or a quick program orientation, they should not document an office call in the database.

**Answer**:  AbbVie admits that Ambassadors are trained to track their interactions with patients and healthcare providers.  AbbVie denies the remaining allegations in Paragraph 104.

105.    Ambassadors are explicitly instructed to disguise their efforts to market to doctors in their written records.  For example, an Ambassador team call the week of July 17, 2013, in which the team discussed communication with doctor's offices and received direction to avoid creating a paper trail when stopping by a doctor's office to drop off Ambassador Program materials, (the exact words on the call agenda are **"don't document"**).

**Answer**:  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 105 and therefore denies them.  AbbVie denies the remaining allegations in Paragraph 105.

106.    Given the frequency of those "short" visits, and their intimate role in effectuating the Ambassadors' regular duties in visiting doctors, the injunction against logging these visits had the result of dramatically underestimating the time Ambassadors spent with doctors and their offices.

**Answer**:  AbbVie denies the allegations in Paragraph 106.

107.    This directive from the top evidences explicit policies and efforts to conceal the marketing and sales purposes of the Program.

**Answer**:  AbbVie denies the allegations in Paragraph 107.

108.    In addition, Ambassadors are expected to provide, and do provide, free materials to patients and office staff (Humira travel kits (valued at approximately $15 to $20 dollars or more); "Talking Training Pens" used to train patient on how to inject themselves) on request.  These travel kits are coolers that enable patients to travel with Humira and maintain the drug at the appropriate

temperature, thereby reducing patient questions (and the time required to answer them) on how to safely travel with the drug, and can be used to keep a variety of materials cool while in transit.

**Answer**:  AbbVie admits that Ambassadors may provide patients enrolled in the Ambassador Program Humira travel kits, which are coolers that patients can use to ensure their Humira is kept at the appropriate temperature, and sometimes use talking training pens when conducting injection training.  AbbVie denies the remaining allegations in Paragraph 108.

109.    Ambassadors are expected to work, and do work, with office staff to bring pre-printed Prior Authorization and other benefit forms to doctors' offices.

**Answer**:  AbbVie denies the allegations in Paragraph 109.

110.    AbbVie also issued an initiative to place dedicated Humira terminals in doctors' offices that print benefit verification forms and other insurance-related documents, with a goal to deploy 2000 such terminals.  At the time Relator left his employment with AbbVie, there were already approximately 200 such terminals placed by AbbVie in doctors' offices as an additional free benefit of prescribing Humira.

**Answer**:  AbbVie denies the allegations in Paragraph 110.

111.    AbbVie used to require Ambassadors to attend as many speaker events as possible, and ensured that Ambassadors were seated at tables next to key potential prescribers so they could pitch the program directly.  Examples of doctors who were influenced in their prescribing behavior by speaker dinners include Dr. Jerome R. Obed and Dr. Varee N. Poochareon.

**Answer**:  AbbVie denies the allegations in Paragraph 111.

112.    At some point, around the same time that AbbVie took the precaution not to actually have the Ambassadors attend every sales call, AbbVie also changed the requirement that Ambassadors regularly attend speaker dinners.  However, throughout the period in which that policy was in place, AbbVie's deployment of Ambassadors to these dinners was designed to influence prescription decisions.

**Answer**:  AbbVie denies the allegations in Paragraph 112.

113.    The Ambassador Program capitalizes on, and violates, patients' trust of nurses and their need for care and assistance, and uses that trust to ensure that the patients start and continue to use Humira.

**Answer**:  AbbVie denies the allegations in Paragraph 113.

114.    Underscoring the misleading conduct, AbbVie provides Ambassadors with company business cards with their Registered Nurse (R.N.) status displayed, and instructs

Ambassadors to brag about their history as nurses to patients. On the other hand, AbbVie management also tells Ambassadors not to *publicly* refer to themselves as healthcare providers, or even to their "patients" as "patients."

**Answer**: AbbVie admits that it provides Ambassadors with company business cards that may reference an Ambassador's credentials. AbbVie denies the remaining allegations in Paragraph 114.

115. For example, AbbVie management praised Relator in a formal review in August, 2014 for his "sincere relationships with *patients*." But, in field observations from manager Sean Garrison, in the section on "*patient* observation interactions," Mr. Garrison wrote to Relator that "while you build fantastic rapport with your patients … by using the word 'people' vs 'patient' you may be able more appropriately identify your role as an educator vs a clinician. It may open up some more/different dialogue as well."

**Answer**: AbbVie lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 and therefore denies them.

116. Although they step in to provide one-on-one consultations to patients, AbbVie's Ambassadors do not provide, and are not permitted to provide, fair and balanced information in these meetings. Instead, AbbVie instructs the Ambassadors to deflect patient's questions about side effects, like Humira's cancer risks. In trainings for the Ambassador Program, role play scenarios demonstrate the response that "[cancer] is a great question for your doctor; I am here to get you your Humira for five dollars or less." The issue, of course, is that with an AbbVie-paid Ambassador serving as their direct point of contact about Humira, it reduces interactions between patients and their health care providers, so far fewer patients are likely to get their questions and concerns about safety answered.

**Answer:** AbbVie admits that Ambassadors are not permitted to provide medical advice to patients but are trained instead to direct patients to contact their physicians for any medical advice they seek. AbbVie denies the remaining allegations in Paragraph 116.

117. When assigned a new client, Ambassadors begin with a call to set up an appointment. Notably, in a material percentage of the time, the patient has *not yet decided whether to fill the prescription,* and thus Ambassadors highly influence the decision to take Humira in the first place. Patients frequently told Relator that they likely would not have started on Humira if he had not contacted them.

**Answer:** AbbVie admits that Ambassadors contact patients who opt to enroll in the Ambassador Program after they are prescribed Humira for an indicated use. AbbVie lacks knowledge or

information sufficient to form a belief as to the truth of the allegations the last sentence of Paragraph 117 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 117.

118. Through these initial calls, the Nurse Ambassador steps in to assist in fulfilling the Humira prescription and answering patient questions about it. Because the Ambassador is there to answer these questions, the doctor doesn't have to. However, reducing interactions between the healthcare provider and the patient in this way severs critical decision-making points between doctor and patient, and replaces it instead with a pharmaceutical company representative standing in to guide and counsel patients.

**Answer:** AbbVie admits that Ambassadors may provide patients who choose to enroll in the Ambassador Program information concerning fulfillment of their Humira prescription. AbbVie denies the remaining allegations in Paragraph 118.

119. After the initial contact, the Ambassador then sets up an in-person meeting, typically in the patient's home. The initial patient visit takes an average of one hour, and as many as two-and-a-half. Typically about one third of the visit is spent making sure the patient has access to reimbursement or, as needed, free drugs. The rest relates to the patients, their diagnoses, and their personal experiences. Ambassadors are told that if the patient is not doing 75% of the talking, something is wrong. During these visits, the Ambassador is expected to discuss the patients' experience with the underlying disease and their concerns, and to familiarize themselves with the patient and their needs more broadly (i.e. family, financial, and living situation), consciously engendering a trust relationship with the patient, who perceives the Ambassador as an extension of his or her doctor's office.

**Answer:** AbbVie admits that patients who enroll in the Ambassador Program may meet with their assigned Ambassador either in person or by phone. AbbVie further admits that the initial meeting between the patient and their Ambassador may include discussions about reimbursement for Humira, and the patient's relevant disease state and experience. AbbVie denies the remaining allegations in Paragraph 119.

120. This perception is understandable, especially given that doctors, at AbbVie's urging, tell patients that "a nurse will be contacting you" about starting on the drug.

**Answer:** AbbVie denies the allegations in Paragraph 120.

121. During these initial and follow up meetings, Ambassadors advise patients on their diagnoses and treatment plans. For example, Ambassadors would advise patients on ways in

31

which to limit adverse events at injection sites, including by taking Benadryl prior to administering a Humira injection.

**Answer:** AbbVie denies the allegations in Paragraph 121.

122. Ambassadors also discuss with patients their backgrounds and related diagnoses, including comorbidities and co-mortalities to the diagnosis resulting in a Humira prescription. During these interactions, patients regularly raised additional questions and concerns about symptoms and health concerns that may or may not have been related to Humira or their underlying diagnosis treated by Humira. Of course, as Registered Nurses, Ambassadors could draw on their experiences in offering suggestions and guidance, including assuaging concerns and thus preventing the need for additional calls to the doctor (saving the doctors time, and money, in the process).

**Answer:** AbbVie admits that Ambassadors may discuss patients' relevant disease states and

experiences. AbbVie denies the remaining allegations in Paragraph 122.

123. In presenting Humira, the Ambassadors show the patient a company-created video that addresses how Humira works. Generally, the Ambassadors discontinue the video when the video turns to the more serious side effects of Humira. Ambassadors believe this is not a problem because in any case patients foreseeably have stopped paying attention to the dense and rushed material around that time (given patients have someone right in front of them with whom to discuss the drug). Thus, especially combined with their inability to discuss side effects, Ambassadors foreclose avenues of giving fair and balanced information to patients.

**Answer:** AbbVie admits that Ambassadors are trained to show Humira patients who have enrolled

in the Ambassador Program an instructional video on how to inject Humira. AbbVie denies the

remaining allegations in Paragraph 123.

124. Similarly, and again instead of being meaningfully fair and balanced, the Ambassador is supposed to hand the patient the long and complex package insert presented in tiny print, explain that it would take far too long to review on the spot, and recommend that the patient review it him or herself. AbbVie likely knows that the dissemination of the package insert to patients is a potential defense to its systematic failure to allow Ambassadors to convey fair and balanced information to patients. AbbVie has set up its systems to require the Ambassadors to regularly order a monthly or quarterly quota of package inserts, regardless of whether they need them.

**Answer:** AbbVie denies the allegations in Paragraph 124.

125. The Ambassador's job is to overcome patients' uncertainty when it comes to the decision to *start* or *continue* on Humira. Given that their performance and variable pay is tied to prescription-related metrics, the Ambassador's success in their job is explicitly tied to their success in doing so.

**Answer:** AbbVie denies the allegations in Paragraph 125.

126. Crucially, when patients have questions about Humira's serious side effects, the Ambassadors abandon their role as "educators" entirely and, despite being experts on Humira and the conditions it treats, must withhold the most important safety information from the patients, instead referring patients to their doctors.

**Answer:** AbbVie admits that Nurse Ambassadors are trained not to provide medical advice to patients but instead to direct patients to contact their physicians for any medical advice they seek.

AbbVie denies the remaining allegations in Paragraph 126.

127. Tellingly, it is only in the area of the drug's serious risks where the Ambassadors are not permitted to speak. The Ambassador Guidelines expressly provide that if a patient "expresses uncertainty over using the Ambassador, the HCP treatment plan, or desire to continue or start treatment with HUMIRA for any reason (such as the patient says 'I am afraid of getting cancer from using Humira'), the Ambassador shall refer the patient back to his/her physician for a further discussion."

**Answer:** AbbVie admits that Paragraph 127 quotes selected excerpts from a version of the Ambassador Guidelines in effect from October 2012 through June 27, 2015, and refers to that document for a complete statement of its contents. AbbVie denies the remaining allegations in Paragraph 127.

128. If a patient reports an adverse event, the Ambassador reports the incident only to AbbVie. The Ambassadors do not report the events to patients' doctors, even though the Ambassadors may well be visiting the patient's doctor's office for various office-assistance reasons. Not only is there no opportunity for Ambassadors to report adverse events on their weekly reporting, but Ambassadors are instructed not to put in writing any questions at all about patients interactions, not just those limited to adverse events.

**Answer:** AbbVie admits that Ambassadors are required to report all adverse events experienced by patients taking Humira to AbbVie, which adheres to all federal reporting standards. AbbVie denies the remaining allegations in Paragraph 128.

129. And while they are instructed to tell the patients to call their doctors about adverse events, Ambassadors do not ensure that they do so—despite regularly joining phone calls with patients for other calls (namely to ensure payment).

**Answer:** AbbVie admits that it trains Ambassadors to advise patients to discuss adverse events with their doctors. AbbVie denies the remaining allegations in Paragraph 129.

130. Approximately ten percent of Suarez' patients experienced an adverse event while taking Humira, including injection site reactions, failure to improve (or worsening conditions), and infections.

**Answer:** AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 130 and therefore denies them.

131. Ironically, Relator knows of at least one instance in which a patient who tried to report an adverse event to a doctor's office was simply routed back to the Ambassador *by the doctor's office* so that the Ambassador (and not the doctor) could address the patient's concerns.

**Answer:** AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 131 and therefore denies them.

132. Following the initial, major visit, Ambassadors typically make two additional in-person visits. Thereafter, Ambassadors then typically switch to phone contact with the patients. All of the Ambassadors log their patient visits on company databases. On these databases, there are pre-set drop boxes and there are no spaces available for characterizing the calls or for reporting adverse events—precluding the ability to create a written record of the same.

**Answer:** AbbVie admits that Ambassadors log patient visits and report adverse events. AbbVie denies the remaining allegations in Paragraph 132.

133. AbbVie leadership directs Ambassadors to obscure the true nature and actual functioning of the Program in their written records and communications.

**Answer:** AbbVie denies the allegations in Paragraph 133.

134. The company has instructed the Ambassadors not to refer specifically to Humira in writing up patient visits, despite the fact that Humira is the only reason for their presence in the patient's home. As manager Lane Murray wrote to Relator: "Thanks for sharing your Magic Moments with the team!! I appreciate the fact that you took the time to be a leader on this by encouraging our team to follow your lead and submitting their Moments of Wow! PS Also, don't forget that we cannot utilize the name of the drug when writing these up … (instead, say 'current therapy' or their 'current drug' etc....) We'll discuss writing these up a little more tomorrow!" In the follow-up discussion, Mr. Murray, consistent with other messaging from other AbbVie managers, expressed concerns about creating a paper trail about Humira.

**Answer:** AbbVie denies that Ambassadors were instructed not to refer specifically to Humira in formally logging patient interactions in AbbVie's system of record. To the extent that this allegation refers instead to informal internal communications for the purpose of spotlighting and sharing particularly positive patient interactions, AbbVie admits that, in this context, Ambassadors were encouraged to focus the positive patient interaction and patient experience, without including patient identifiable information or focusing on the fact that the patient in question was taking Humira. AbbVie lacks knowledge or information sufficient to admit or deny the quote language in Paragraph 134 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 134.

135. Indeed, Ambassadors are specifically and repeatedly told that if they have a question about what they permissibly can do in the course of their patient interactions, they should not write it down and call their supervisor instead. This point was made during Ambassador training programs and reiterated frequently by AbbVie management personnel, including Tracey Calamita, Lane Murray, and Sean Garrison.

**Answer:** AbbVie admits that Ambassadors who have questions concerning the Ambassador Program Guidelines are trained to ask for guidance from their supervisors. AbbVie denies the remaining allegations in Paragraph 135.

136. Taken together, the prohibitions detailed herein against mentioning Humira by name, against using the word "patients" to describe the patients, against recording time with doctors, and against recording adverse events have served to limit the record of the Ambassadors' actual work, and evidence AbbVie's knowledge and intent in deploying the Ambassador program to make money, but hiding that true motive from scrutiny by preventing the development of a written record.

**Answer:** AbbVie denies the allegations in Paragraph 136.

137. Another key objective of the Ambassador Program and goal in the initial patient meetings is to get patients to enroll on the website "MyHumira." This website reflects AbbVie's effort to use the Ambassador program to target the marketing of Humira through the Ambassador Program. MyHumira is a service platform through which AbbVie compiles specific data about each patient's personal information, including geographic location, disease profile, provider information, Humira usage, payment source information, and Ambassador interaction, among other things. This allows AbbVie to track macro information about the drug and the doctors that prescribe it, in order to better target its marketing efforts.

35

**Answer:** AbbVie admits that it operated a website, "My Humira." AbbVie denies the allegations in Paragraph 137.

138. Every one of the Suarez' managers, including Tracey Calamita, Reed Morton, Donald Lane Murray, Sean Garrison, and Maya Stewart (National Ambassador Manager), repeatedly reminded the Suarez (and other Ambassadors) to carefully track patient data so that AbbVie could better focus its resources. The common phrase was to "focus resources to have maximal return."

**Answer:** AbbVie admits that Ambassadors are trained to record their interactions with patients.

AbbVie denies the remaining allegations in Paragraph 138.

139. The Program was designed to reach and did reach government payor patients, on whose behalf claims were submitted to Medicare and Medicaid. In this context, Ambassadors occupy a crucial role in assisting patients with coverage for Humira, tasks that (as noted above) require the Ambassadors to spend about a third of the first visit on payment information.

**Answer:** AbbVie denies the allegations in Paragraph 139.

140. Some of this work is simply replacing what otherwise is the work of the doctors' office staff in dealing with insurance companies. AbbVie has instructed Ambassadors that while they may not call insurers directly, they can (and should) be on the phone when patients call, and can (and should) encourage patients to initiate calls to learn about coverage. This includes government insurers like Medicare and Medicaid.

**Answer:** AbbVie admits that Ambassadors may be on the phone with patients when patients call their insurers. AbbVie denies the remaining allegations in Paragraph 140.

141. AbbVie representatives provide insurance assistance, including helping patients navigate open enrollment periods in their insurance plans, and respond to patient questions about insurance coverage and copays, all in order to ensure their continued coverage. In so doing, AbbVie representatives fulfill the role of professional staff and office administrators, and field questions about deductibles, co pays, coinsurance, and health savings accounts.

**Answer:** AbbVie admits that Ambassadors may provide patients with insurance information related to Humira, including information related to open enrollment periods, coverage, and copays.

AbbVie denies the remaining allegations in Paragraph 141.

142. While Ambassadors encourage commercial patients to obtain Humira co-pay cards, they take a different but equally effective approach with Government Payor patients. For that population, Ambassadors are required to contact Medicare to determine the patients' payment status: namely, how much the patient must pay in the first couple of months of treatment, when

the payment is relatively manageable, and at what point the patient's coverage stops during the gap period before coverage resumes (the so-called "Donut Hole").

**Answer:**  AbbVie denies the allegations in Paragraph 142.

143.    At that point, armed with that information, the Ambassador refers the patient to the "Patient Assistance Foundation."

**Answer:**  AbbVie denies the allegations in Paragraph 143.

144.    AbbVie has given away tens of thousands of free dosages of Humira that, among things, and intentionally, help Part D Medicare patients fill the "Donut Hole."  The Ambassadors have a crucial role in connecting patients with the AbbVie Patient Assistance Foundation that provides these free drugs.

**Answer:**  AbbVie admits that Ambassadors may provide patients who have been prescribed

Humira information about AbbVie's Patient Assistance Foundation.  AbbVie denies the remaining

allegations in Paragraph 144.

145.    As AbbVie managers told Suarez, true, independent charity foundation assistance for Humira runs out in the first couple of months of the year, but AbbVie's *own* Patient Assistance Foundation has ample free supply to give patients during their Medicare Part D payment gap period.

**Answer:**  AbbVie denies the allegations in Paragraph 145.

146.    In Suarez' experience, *all* patients (save one or two who appeared to be quite wealthy) were able to obtain free drugs from AbbVie through the Patient Assistance Foundation based on how AbbVie's Patient Assistance Foundation laxly defined "need."

**Answer:**  AbbVie denies the allegations in Paragraph 146.

147.    As touted at national meetings attended by all the Ambassadors, AbbVie gave out substantial amounts of free drugs per year.  Relator recalls the amount from 2013 to be 94,000 dosages.  This degree of assistance to Government Payor patients enables hundreds or thousands of patients to get launched on this costly drug that, as addressed above, is difficult to discontinue usage.

**Answer:**  AbbVie admits that its Patient Assistance Foundation provides financial assistance to

eligible patients who would not otherwise be able to afford Humira prescribed by their healthcare

provider. AbbVie denies the remaining allegations in Paragraph 147.

148.     Finally, and further underscoring the attention AbbVie pays to Medicare reimbursement information, AbbVie management provides information about open enrollment periods for Medicare plans and requires Ambassadors to try to push their patients into plans that maximize reimbursement for Humira.  In Suarez' experience, the open-enrollment period for government insurance, in or about November of the two years he worked as an Ambassador, were particularly busy, with calls to Medicare and Medicaid along with patients to secure and verify coverage for Humira occurring multiple times a week throughout that window.

**Answer:**  AbbVie admits that Ambassadors may provide information to patients about open enrollment periods for all types of insurers.  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 148 and therefore denies them. AbbVie denies the remaining allegations in Paragraph 148.

149.     Like other Ambassadors, Relator was expected to memorialize "success" stories in which the outcome of the interaction with a patient was to get them on Humira, or in which a physician responded particularly well to the Ambassador Services.  These stories were often distributed in email in what the company referred to as "Magic Moments," "Moments of Wow," "Making Magic" incidents, and/or "Highlight Stories."

**Answer:**  AbbVie admits that sometimes Ambassadors share stories about patients who are successful in adhering to the treatment plan prescribed by their healthcare provider.  Ambassadors may have referred to these stories as "Magic Moments," "Moments of Wow," "Making Magic" incidents, and/or "Highlight Stories."  AbbVie denies the remaining allegations in Paragraph 149.

150.     Examples that Relator saw or penned include anecdotes where patients said "I really wasn't gonna take this, if you hadn't called me I just wasn't ready for this...." and an anecdote where a "client [was] thinking about stopping..." but was convinced by the Ambassador not to.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 150 and therefore denies them.

151.     In or about December 2014, Relator Suarez emailed his team summarizing "10 very common THANK YOU comments" that Ambassadors report hearing from patients as moments of "WOW."  Fourth on the list, he noted patients thanking Ambassadors because "Medicare Part D is so confusing, thank you for being there with me as I called on this..."

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 151 and therefore denies them.

152.    The following serve as additional illustrative examples of the type of patient work Suarez undertook as part of the Nurse Ambassador program. These are representative cases only.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

Paragraph 152 and therefore denies them.

153.    In or about summer 2013, Relator received a patient assignment to an elderly woman living near 95th street and the Interstate 95 freeway in Miami. The patient was a psoriasis patient, and Suarez visited her in her home for injection training and orientation to the Ambassador Program. While there, they discussed the patient's insurance coverage, and Relator learned she was having difficulty obtaining Medicare coverage for her prescription. Relator and the patient called Medicare that day and were able to arrange for coverage.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

Paragraph 153 and therefore denies them.

154.    In or about July 2013, Relator Suarez sent his supervisors an account of a "Happy Ending" for a Medicare patient living in the Little Haiti area of Miami.  Prior to visiting this patient, Relator Suarez visited the offices of Dr. Sullivan in Miami to "reinforce[e] the Nurse Ambassador Role."  After the visit to Dr. Sullivan, Suarez relayed they had "obviously made an impression" because the doctor then "activated" Relator Suarez' Nurse Ambassador services.  However, as Sales Representative John Little warned Suarez, Dr. Sullivan would use the Program for the "tough" cases that would otherwise require him and his staff significant extra work.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

the first three sentences of Paragraph 154 and therefore denies them.  AbbVie denies the remaining

allegations in Paragraph 154.

155.    Suarez visited the patient, who was legally blind, in his home in the Little Haiti neighborhood, and assisted in presenting an appeal to obtain assistance from the Patient Assistance Foundation during the Medicare coverage gap (also known as the "donut hole").  Suarez helped gather proof of income (noting Medicare on his bank statement) and the appeal was ultimately successful.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

Paragraph 155 and therefore denies them.

156.    This success story was shared within the broader team in an email from Maya Stewart, the National Ambassador Manager, recognizing Suarez for his work. Notably, after this initial experience dealing with a "challenging" patient of Dr. Sullivan's, Dr. Sullivan was impressed and encouraged by the hands-on services in the Ambassador program. He continued to

write Humira prescriptions, and took to assigning his more "difficult" or "challenging" patients to Suarez.

**Answer:** AbbVie lacks knowledge or information sufficient to admit or deny the allegations in

Paragraph 156 and therefore denies them.

157. On or about October 18, 2013, Suarez received public praise in a "Patient Highlight" email sent to the team by Maya Stewart. Suarez was working with a psoriasis patient in Miami who, when he turned 65 in April 2013, had changed insurance to Medicare. He was no longer able to afford Humira on the new plan. As she related, this patient's doctor had been previously reluctant to use the Ambassador Program and decided to "test" the Program with this challenging issue. Suarez was assigned to the patient, and worked with him to appeal the coverage denial from Medicare. The patient was *again* denied, and Suarez escalated the issue and again appealed it. The prescription for Humira was ultimately approved for Medicare coverage following Suarez' work.

**Answer:** AbbVie admits that Maya Stewart sent an email on or about October 18, 2013 regarding

certain reports by Ambassadors, including Relator, about patient interactions. AbbVie denies that

Maya Stewart "related" that the "patient's doctor had been previously reluctant to use the

Ambassador Program," and refers to that email for a complete statement of its contents. AbbVie

denies the remaining allegations in Paragraph 157.

158. After the success in obtaining Medicare coverage, and as related to AbbVie colleagues in the email from Ms. Stewart, both the patient and the physician were "thrilled at the level of support provided by the Ambassador Program." In fact, the physician "communicated that they will be encouraging each patient to enroll in the Ambassador Program **due to the high level of support provided."** In the same email, Stewart noted that Medicare coverage story, and the physician's positive response, was **"forwarded to the sales organization and Senior Leadership."**

**Answer:** AbbVie admits that Paragraph 158 quotes selected excerpts from an email sent by Maya

Stewart on or about October 18, 2013, with emphasis added by Relator. AbbVie refers to that

email for a complete statement of its contents. AbbVie denies the remaining allegations in

Paragraph 158.

159. Also in or about October 2013, Relator Suarez and colleagues communicated about a particularly difficult case of an 83-year-old Medicare patient, originally from Alaska but living in Nogales, Arizona at the time. This patient had been flying from Nogales, Arizona to Seattle, Washington to see a dermatologist who prescribed him Humira. Ultimately, Roxanne—another

Ambassador based in Nogales—visited the patient in his home in Nogales, and "coached and watched him inject."

**Answer:**  AbbVie admits that in October 2013, Ambassador Roxanne Nardecchia sent Relator an email describing her interactions with an 83-year-old patient living in Nogales, Arizona, and refers to that email for a complete and accurate statement of its contents.  AbbVie denies the remaining allegations in Paragraph 159.

160.    In the latter half of his employment with AbbVie, in or about fall 2013 or spring 2014, Relator recalls visiting a female patient in the Miami area who worked at the local animal shelter.  The patient suffered from psoriasis, and was experiencing difficulty in securing her Medicare coverage for her Humira prescription.  Relator stepped in to assist, and they successfully contacted Medicare to verify her coverage.

**Answer:**  AbbVie lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 160 and therefore denies them.

161.    Absent access to Discovery, Relator cannot state the amounts paid by these physicians for administrative work and staffing support. However—and in the context that the average cost per physician per year to interact with health plans *alone* is approximately $68,859– on information and belief, these physicians, and others whose patients were enrolled in the Ambassador Program, saved money in having to pay less in their staff time and overtime pay, and in hiring and employing staff members to address administrative work for patients.  Further, these doctors (and others) had more time and capacity to see (and bill for) more patients because Ambassadors stepped in to address patient and administrative work for Humira that otherwise would have occupied the doctor's time.

**Answer:**  AbbVie denies the allegations in Paragraph 161.

162.    During his tenure with AbbVie, Suarez was a frequent attendee, and presenter, at trainings for Ambassadors from throughout the United States.

**Answer:**  AbbVie admits that during the time Relator was employed by Quintiles as an Ambassador, he attended and presented at certain trainings for Ambassadors.  AbbVie denies the remaining allegations in Paragraph 162.

163.    In or about April 2013, Suarez attended a training meeting at headquarters in Chicago as he onboarded to the Program along with several others. During that meeting, he recalls receiving instruction to "stop thinking like a nurse" or words to that effect.

**Answer:** AbbVie admits that, in April 2013, it conducted Ambassador training in Deerfield, Illinois. AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 163 and denies them.

164.    In or about September 2013, AbbVie held a national meeting for the Immunology team in in Puerto Rico, including both Ambassadors and Sales Representatives. At this meeting, which Suarez attended, Ambassadors received training on patient interview techniques, including deflecting questions about Humira's serious side effects. Ambassadors attended that training from throughout the United States.

**Answer:** AbbVie admits that it held a Patient Outreach National Meeting, as well as a National Sales Meeting, in September 2013 in Puerto Rico, which were attended by Humira Ambassadors, Patient Advocates, and AbbVie Sales Representatives from various states. AbbVie admits that Relator registered as in attendance, and that Ambassadors attended trainings at that conference. AbbVie denies the remaining allegations in Paragraph 164.

165.    In or about January 2014, Suarez presented at an Ambassador Training in Chicago, titled the "QI Initial Sales Training Class" in which he provided training at AbbVie's headquarters for new Ambassadors from across territorial regions.

**Answer:** AbbVie admits that Relator presented at the 2014 Q1 Initial Sales Training Class for new Ambassadors that occurred in January of 2014. AbbVie denies that the training occurred at AbbVie's headquarters.

166.    At a national sales meeting in March 2014, Relator was selected as a team captain for his region. In this position, he trained Ambassadors from throughout the Southeast region, including from Georgia and North Carolina.

**Answer:** AbbVie denies the allegations in Paragraph 166.

167.    In or about September 2014, Relator attended a National Immunology Sales Team meeting in San Antonio, Texas. This meeting included joint meetings and training sessions for Sales Representatives and Ambassadors from across the country.

**Answer:** AbbVie admits that it held a National Sales Meeting the week of September 8, 2014 in San Antonio, Texas, and that Relator registered as in attendance. AbbVie lacks knowledge or

information sufficient to admit or deny the remaining allegations in Paragraph 167 and therefore denies them.

168.     Suarez also gained first-hand exposure to the nationwide operation of the Program through working as a translator for other Ambassadors.  Suarez is a fluent Spanish speaker, and was frequently asked to translate for Spanish speaking patients over the phone.  For example, he assisted Ambassador Mary Willingham with a Spanish speaking patient in Boston, as well as Candice Whitten with a Spanish speaking patient in the Charlotte, North Carolina region, and assisted other Ambassadors with their patients on numerous other occasions.

**Answer:**  AbbVie denies that Suarez "gained first-hand exposure to the nationwide operation" of the Ambassador Program.  AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 168 and therefore denies them.

169.     Through his role as a national trainer, as well as through routine communications with Ambassadors and Sales Representatives in regions outside of Florida, Suarez observed the work of other Ambassadors throughout the country.

**Answer:**  AbbVie denies that Relator had a "role as a national trainer."  AbbVie lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 169 and therefore denies them.

170.     In addition to these first-hand observations from Suarez' own experience as to the nationwide scope of the conduct alleged, AbbVie also uses a "low touch" program for patients who already have been taking Humira for longer periods which was also designed to offer a sweeping geographic reach.  Specifically, established patients communicate with company-paid nurses who work from home only by telephone.  Second, as of approximately fall 2014 the company piloted a program ("Operation Dakota") in which prospective Humira patients living in sparsely-populated areas have contact with Ambassadors by telephone or video, so that no market would be beyond the reach of the Ambassador Program.

**Answer:**  AbbVie admits that in 2014, it piloted a program it called "Project Dakota," which provided Ambassador support via telephone to patients prescribed Humira for indicated uses who wanted to enroll in the Ambassador Program and resided in areas of the country where Ambassadors were not available to conduct in-person meetings.  AbbVie denies the remaining allegations in Paragraph 170.

171.     The illegal promotional schemes served their intended purpose, as they induced doctors to write prescriptions of Humira, and ensured that patients kept refilling those prescriptions each much, with the resulting boost to AbbVie's bottom line.

**Answer:**  AbbVie denies the allegations in Paragraph 171.

172.     Defendant has caused Medicaid, Medicare, and other Government Programs and *Qui Tam* States to pay hundreds of millions of dollars that they should not have paid, unjustly enriching AbbVie by allowing it to be paid for claims that were not reasonable and necessary and/or that were produced by kickbacks.

**Answer:**  AbbVie denies the allegations in Paragraph 172.

173.     AbbVie provides healthcare professionals with services of value in return for or to induce purchasing, ordering, arranging for or recommending purchasing or ordering of good or items for which payment was made by Government Programs, in violation of the federal Anti-Kickback statute, 42 U.S.C. § 1320a-7b(b), and state analogs.

**Answer:**  AbbVie denies the allegations in Paragraph 173.

174.     These kickbacks caused healthcare professionals to prescribe or recommend that other healthcare professionals prescribe Humira.

**Answer:**  AbbVie denies the allegations in Paragraph 174.

175.     Government Programs, including Medicare and Medicaid, do not cover claims for drugs where there is a kickback involved in the underlying transaction—including claims that were submitted for payment of a drug as a result of a kickback given to a healthcare professional to prescribe that drug.  Claims submitted to Government Programs where a kickback is involved in the underlying transaction are false within the meaning of the federal False Claims Act and State analogs.

**Answer:**  No response is required to the allegations in Paragraph 175, which merely state legal

conclusions.

176.     In order to enroll in and bill Medicare, providers must sign CMS Form 855, which states:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. ... I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.

44

**Answer:** Admitted.

177. Similarly, any provider who submits claims to Medicaid must sign a provider agreement with each Medicaid program to which it submits claims.

**Answer:** Admitted.

178. Government Programs paid reimbursements for those false claims, and as a result have incurred and continue to incur significant damages due to AbbVie's illegal use of kickbacks.

**Answer:** AbbVie denies the allegations in Paragraph 178.

179. AbbVie leadership knew and intended that the Program primarily functioned to boost revenue, not educate patients, including as evidenced by the directions given to Ambassadors not to document certain aspects of their work in the Program, the compensation structure which rewards Ambassadors for inducing prescriptions, and AbbVie's monitoring of the Return on Investment of the Program.

**Answer:** AbbVie denies the allegations in Paragraph 179.

180. The Medicaid Rebate Agreement with the United States Secretary of Health and Human Services, which is part of the Social Security Act, 42 U.S. C. § 1396s, provides that drug products are only eligible for reimbursement if and when parties to the agreement are in compliance with applicable federal and state laws.

**Answer:** No response is required to Paragraph 180, which merely states legal conclusions.

181. These laws include, but are not limited to, the federal and corresponding state anti-kickback statutes, the FDAMA, and the Food, Drug & Cosmetic Act and all related regulations.

**Answer:** No response is required to Paragraph 181, which merely states legal conclusions.

182. As described in this Complaint, AbbVie has knowingly and repeatedly violated these laws in the promotion of Humira and employment of the Ambassador Program.

**Answer:** AbbVie denies the allegations in Paragraph 182.

183. Accordingly, AbbVie, expressly and impliedly, falsely certified their compliance with these federal and state statutes and regulations.

**Answer:** AbbVie denies the allegations in Paragraph 183.

184. AbbVie provided kickbacks to doctors who opted to prescribe its expensive drug. Materiality is satisfied as a matter of law because where (as here) claims for repayment are tainted by a kickback, that kickback is material to the government's decision to pay a claim. *Guilfoile* v. *Shields,* 913 F.3d 178, 190 (1st Cir. 2019).

**Answer:** AbbVie denies the allegations in Paragraph 184.

185.     The FCA requires no specific intent to defraud.  Instead, scienter is satisfied where there is "deliberate ignorance" or "reckless disregard" (as well as actual knowledge) of the fraud on the part of the Defendant. *See* 28 U.S.C. § 3729(b)(1)(A).

**Answer:**  Admitted.

186.     Scienter is satisfied here because, as shown in the paragraphs above, AbbVie knew, and intended, to induce and reward prescriptions for Humira through the Nurse Ambassador program, thereby causing the submission of a false claim for payment.

**Answer:**  AbbVie denies the allegations in Paragraph 186.

187.     AbbVie paid kickbacks to counteract plateauing sales of its most important product, and measured and tracked the return on its investment in doing so. It incentivized prescriptions through evaluating and compensating Ambassadors based on prescription-related metrics.

**Answer:**  AbbVie denies the allegations in Paragraph 187.

188.     As detailed herein, AbbVie undertook to obscure the true nature of the Ambassador Program, including directing Ambassadors not to create a paper trail of their work with patients and visits to doctors, or their collaborations with the Sales team, all the while touting Ambassadors as a resource to the physician's office. Providing doctors with valuable resources in exchange for Humira prescriptions was unlawful, and AbbVie knew it.

**Answer:**  AbbVie denies the allegations in Paragraph 188.

189.     Alternatively, AbbVie acted with deliberate ignorance or reckless disregard of its fraudulent conduct, resulting in false claims as outlined above.

**Answer:**  AbbVie denies the allegations in Paragraph 189.

## COUNT I

### Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

190.     Plaintiff-Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

191.     AbbVie knowingly presented and caused to be presented to the Federal Government false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1).

**Answer**:  AbbVie denies the allegations in Paragraph 191.

192.    As a result of the actions as set forth above in this Complaint, the United States of America has been, and may continue to be, severely damaged.

**Answer**:  AbbVie denies the allegations in Paragraph 192.

## COUNT II

### Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

193.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

194.    AbbVie knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to the payment of a false or fraudulent claims, thereby causing false or fraudulent claims for payment to actually be paid or approved, in violation of 31 U.S.C. § 3729(a)(2).

**Answer**:  AbbVie denies the allegations in Paragraph 194.

195.    The United States of America, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid and may still be paying or reimbursing for Humira prescribed to patients enrolled in Government Programs.

**Answer**:  AbbVie denies the allegations in Paragraph 195.

196.    As a result of the actions as set forth above in this Complaint, the United States of America has been, and may continue to be, severely damaged.

**Answer**:  AbbVie denies the allegations in Paragraph 196.

## COUNT III

### Violation of the State of California False Claims Act, Cal. Gov't Code § 12650 *et seq.*

197.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

47

198.     This is a civil action brought by Plaintiff-Relator, on behalf of the State of California, against Defendant under the California False Claims Act, Cal. Gov't Code § 12652(c).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 198.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

199.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 199.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

200.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to false or fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 200.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

201.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of California, or its political subdivisions, in violation of Cal. Gov't Code § 12651(a)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 201.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

202.     The payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code § 14107.2.

**Answer**:  No response is required to the allegations in Paragraph 202, which merely state legal conclusions.

203.     AbbVie violated Cal. Bus. & Prof. Code§ 650 and 650.1 and Cal. Welf. & Inst. Code § 14107.2 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 203.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

204.     AbbVie also violated Cal. Gov't Code § 12651(a) by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, Cal. Bus. & Prof. Code §§ 650-650.1, and Cal. Welf. & Inst. Code § 14107.2, compliance with which are express and implied conditions of payment for claims submitted to the State of California.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 204.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

205.     The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state and state subdivision funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore no response is required to Paragraph 205.  To the extent a response is required, AbbVie denies the allegations in this paragraph.

206.     As a result of AbbVie's actions, as set forth above, the State of California and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count III, and therefore

no response is required to Paragraph 206.  To the extent a response is required, AbbVie denies the

allegations in this paragraph.

**COUNT IV**
**Violation of the State of Colorado Medical False Claims Act,**
**Colo. Rev. Stat. § 25.5-4-303.5,** *et seq.*

207.    Plaintiff-Relator incorporates by reference the preceding paragraphs of the
Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

208.    This is a civil action brought by Plaintiff-Relator in the name of the State of
Colorado, against AbbVie pursuant to the State of Colorado False Claims Act, Colo. Rev. Stat.
§25.5-4-306.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore

no response is required to Paragraph 208.  To the extent a response is required, AbbVie denies that

Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

209.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the
information involved, or with actual knowledge of the falsity of the information, presented or
caused to be presented, and may still be presenting or causing to be presented, false or fraudulent
claims for payment or approval to an officer or employee of the state of Colorado under the
Colorado Medical Assistance Act, in violation of Colo. Rev. Stat. § 25.5-4- 305(l)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore

no response is required to Paragraph 209.  To the extent a response is required, AbbVie denies the

allegations in this paragraph.

210.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the
information involved, or with actual knowledge of the falsity of the information, made, used, or
caused to be made or used, and may still be making, using, or causing to be made or used, false
records or statements material to false or fraudulent claims for payment or approval to an officer
or employee of the state of Colorado under the Colorado Medical Assistance Act, in violation of
Colo. Rev. Stat. § 25.5-4-305(l)(b).

50

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore no response is required to Paragraph 210. To the extent a response is required, AbbVie denies the allegations in this paragraph.

211. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the state in connection with the Colorado Medical Assistance Act, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(f). AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money or property to the state in connection with the Colorado Medical Assistance Act, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(f).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore no response is required to Paragraph 211. To the extent a response is required, AbbVie denies the allegations in this paragraph.

212. Colo. Rev. Stat. Ann. § 25.5-4-414 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Colorado Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 212, which merely state legal conclusions.

213. AbbVie violated Colo. Rev. Stat. Ann. § 25.5-4-414 by engaging in the conduct alleged herein, and further violated the Colorado Medicaid False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDC A, federal Anti-Kickback Act, and Colo. Rev. Stat. Ann. § 25.5-4-414, compliance with which are express and implied conditions of payment for claims submitted to the State of Colorado.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore no response is required to Paragraph 213. To the extent a response is required, AbbVie denies the allegations in this paragraph.

214. The State of Colorado, or its political subdivisions, unaware of the falsity of the claims and/or statements made or caused to be made, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related

management services for recipients of state and state subdivision-funded health insurance programs.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IV, and therefore

no response is required to Paragraph 214. To the extent a response is required, AbbVie denies the

allegations in this paragraph.

**COUNT V**
**Violation of the State of Connecticut False Claims Act for Medical Assistance Programs,**
**Conn. Gen. Stat. § 17b-301a** *et seq.*

215.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

216.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Connecticut, against AbbVie under the Connecticut False Claims Act for Medical Assistance Programs, Conn. Gen. Stat. § 17b-301d.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore

no response is required to Paragraph 216. To the extent a response is required, AbbVie denies that

Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

217.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Connecticut, or its political subdivisions, false or fraudulent claims for payment or approval under a medical assistance program administered by the Department of Social Services, in violation of Conn. Gen. Stat. § 17b-30lb(l).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore

no response is required to Paragraph 217. To the extent a response is required, AbbVie denies the

allegations in this paragraph.

218.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to secure the payment or approval by the State of Connecticut, or its

political subdivisions, false or fraudulent claims under a medical assistance program administered by the Department of Social Services, in violation of Conn. Gen. Stat. § 17b-301b(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 218. To the extent a response is required, AbbVie denies the allegations in this paragraph.

219. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Connecticut, or its political subdivisions, under a medical assistance program administered by the Department of Social Services, in violation of Conn. Gen. Stat. § 17b-301b(7).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 219. To the extent a response is required, AbbVie denies the allegations in this paragraph.

220. Conn. Gen. Stat. § 53a-161c prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Connecticut Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 220, which merely state legal conclusions.

221. AbbVie violated Conn. Gen. Stat. § 53a-161c by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 221. To the extent a response is required, AbbVie denies the allegations in this paragraph.

222. AbbVie further violated the Connecticut False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Conn. Gen. Stat.§ 53a-161c, compliance with which are express and implied conditions of payment for claims submitted to the State of Connecticut.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 222. To the extent a response is required, AbbVie denies the allegations in this paragraph.

223. The State of Connecticut, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state and state subdivision funded health insurance programs.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 223. To the extent a response is required, AbbVie denies the allegations in this paragraph.

224. As a result of AbbVie's actions, as set forth above, the State of Connecticut and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count V, and therefore no response is required to Paragraph 224. To the extent a response is required, AbbVie denies the allegations in this paragraph.

## COUNT VI

### Violation of the State of Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201 *et seq.*

225. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

226. This is a civil action brought by Plaintiff-Relator on behalf of the State of Delaware, against AbbVie under the Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1203(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 226. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

227. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Delaware, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Del. Code Ann. tit. 6, § 1201(a)(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 227. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

228. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Delaware, or its political subdivisions, in violation of Del. Code Ann. tit. 6, § 1201(a)(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 228. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

229. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Delaware, or its political subdivisions, in violation of Del. Code Ann. tit. 6, § 1201(a)(7).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 229. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

230. Del. Code Ann. tit. 31, § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebates) directly or indirectly, overtly or covertly, in cash or in kind in return for the furnishing of any medical care or services for which payment may be made in whole or in part under any public assistance program.

**Answer**:  No response is required to the allegations in Paragraph 230, which merely state legal conclusions.

231.    AbbVie violated Del. Code Ann. tit. 31, § 1005 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 231.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

232.    AbbVie further violated Del. Code Ann. tit. 6, § 1201(a) by their deliberate and systematic violation of federal and state laws, including the FDCA, the Anti-Kickback Act, and Del. Code Ann. tit. 31, § 1005, compliance with which are express and implied conditions of payment for claims submitted to the State of Delaware.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 232.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

233.    The State of Delaware, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of healthcare programs funded by the State of Delaware.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 233.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

234.    As a result of AbbVie's actions, as set forth above, the State of Delaware and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count VI, and therefore no response is required to Paragraph 234.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

<u>**COUNT VII**</u>

**Violation of the District of Columbia False Claims Act, D.C. Code § 2-308.13 *et seq.***

235.     Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

<u>**Answer**</u>:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

236.     This is a civil action brought by Plaintiff-Relator on behalf of the District of Columbia, against AbbVie under the District of Columbia False Claims Act, D.C. Code § 2-308.15(b).

<u>**Answer**</u>:  AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 236.  To the extent an answer is required,  AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

237.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the District, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of D.C. Code § 2-308.14(a)(1).

<u>**Answer**</u>:  AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 237.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

238.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be used, and may still be making, using, or causing to be made or used, false records or statements to get false claims paid or approved by the District, or its political subdivisions, in violation of D.C. Code § 2-308.14(a)(2).

<u>**Answer**</u>:  AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 238.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

239.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made,

used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the District, or its political subdivisions, in violation of D.C. Code § 2-308.14(a)(7).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 239. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

240.     D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to accept any type of remuneration for "(1) Referring a recipient to a particular provider of any item or service or for which payment may be made under the District of Columbia Medicaid program, or (2) Recommending the purchase, lease, or order of any good, facility, service, or item for which payment may be made under the District of Columbia Medicaid Program."

**Answer**: No response is required to the allegations in Paragraph 240, which merely state legal conclusions.

241.     AbbVie violated D.C. Code § 4-802(c) by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 241. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

242.     AbbVie further violated D.C. Code§ 2-381.02(a) by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, C. Code§ 4-802(c), compliance with which are express and implied conditions of payment for claims submitted to the District of Columbia.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 242. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

243.     The District of Columbia, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of health insurance programs funded by the District.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 243. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

244. As a result of AbbVie's actions, as set forth above, the District of Columbia and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count VII, and therefore no response is required to Paragraph 244. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT VIII

**Violation of the State of Florida False Claims Act, Fla. Stat. § 68.081 *et seq.***

245. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

246. This is a civil action brought by Plaintiff-Relator on behalf of the State of Florida, against AbbVie under the Florida False Claims Act, Fla. Stat. § 68.083(2).

**Answer**: AbbVie states that this civil action purports to assert a claim under the Florida False Claims Act, Fla. Stat. § 68.083(2), on behalf of the state of Florida. AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

247. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Florida, or its agencies, false or fraudulent claims for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

**Answer**: AbbVie denies the allegations in Paragraph 247.

248. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used,

false records or statements to get false or fraudulent claims paid or approved by the State of Florida, or its agencies, in violation of Fla. Stat. § 68.082(2)(b).

**Answer**: AbbVie denies the allegations in Paragraph 248.

249.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida, or its agencies, in violation of Fla. Stat. § 68.082(2)(g).

**Answer**: AbbVie denies the allegations in Paragraph 249.

250.    Fla. Stat. § 409.920 makes it a crime to "[k]nowingly charge, solicit, accept, or receive anything of value, other than an authorized copayment from a Medicaid recipient, from any source in addition to the amount legally payable for an item or service provided to a Medicaid recipient under the Medicaid program or knowingly fail to credit the agency or its fiscal agent for any payment received from a third-party source;" or "knowingly, solicit, offer, pay or receive any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing or arranging of the furnishing of any item or service for which payment may be made, in whole or in part, under the Medicaid program, or in return for obtaining, purchasing, leasing, ordering, or arranging for or recommending, obtaining, purchasing, leasing, or ordering any goods, facility, item, or service, for which payment may be made, in whole or in part, under the Medicaid program."

**Answer**: No response is required to the allegations in Paragraph 250, which merely state legal conclusions.

251.    Fla. Stat. § 456.054(2) also prohibits the offering, payment, solicitation, or receipt of a kickback to a healthcare provider, whether directly or indirectly, overtly or covertly, in cash or in kind, in exchange for referring or soliciting patients.

**Answer**: No response is required to the allegations in Paragraph 251, which merely state legal conclusions.

252.    AbbVie violated Fla. Stat. § 409.920(c) and (e) and § 456.054(2) by engaging in the conduct alleged herein.

**Answer**: AbbVie denies the allegations in Paragraph 252.

253.    AbbVie further violated Fla. Stat. § 68.082(2) by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-kickback Act, Fla. Stat. § 409.920(c) and (e) and § 456.054(2), compliance with which are express and implied conditions of payment for claims submitted to the State of Florida.

**Answer**: AbbVie denies the allegations in Paragraph 253.

254. The State of Florida, or its agencies, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance plans funded by the State of Florida or its agencies.

**Answer**: AbbVie denies the allegations in Paragraph 254.

255. As a result of AbbVie's actions, as set forth above, the State of Florida and/or its agencies have been, and may continue to be, severely damaged.

**Answer**: AbbVie denies the allegations in Paragraph 255.

## COUNT IX

### Violation of the State of Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

256. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

257. This is a civil action brought by Plaintiff-Relator on behalf of the State of Georgia, against AbbVie pursuant to the Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.2(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 257. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

258. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to the Georgia Medicaid program false or fraudulent claims for payment or approval, in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 258. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

259.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Georgia Medicaid program, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 259.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

260.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Georgia, or its political subdivisions, in violation of Ga. Code Ann. § 49-4-168.1(a)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 260.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

261.     AbbVie further violated the Georgia False Medicaid Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA and the federal Anti-Kickback Act, compliance with which are express and implied conditions of payment for claims submitted to the State of Georgia.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 261.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

262.     The State of Georgia, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of Medicaid.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 262.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

263.    As a result of AbbVie's actions, as set forth above, the State of Georgia and/or political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count IX, and therefore no response is required to Paragraph 263.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT X

### Violation of the State of Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

264.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

265.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Hawaii, against AbbVie under the Hawaii False Claim Act, Haw. Rev. Stat. § 661-25.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 265.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

266.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Hawaii, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Haw. Rev. Stat. § 661-21(a)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 266.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

267.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made and used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Hawaii, or its political subdivisions, in violation of Haw. Rev. Stat. § 661-21(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 267.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

268.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Hawaii, or its political subdivisions, in violation of Haw. Rev. Stat. § 661- 21(a)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 268.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

269.    AbbVie further violated Haw. Rev. Stat. § 661-21(a) by their deliberate and systematic violation of federal and state laws, including the FDCA and Anti-kickback Act,, compliance with which are express and implied conditions of payment for claims submitted to the State of Hawaii.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 269.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

270.    The State of Hawaii, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 270.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

271.    As a result of AbbVie's actions, as set forth above, the State of Hawaii and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count X, and therefore no response is required to Paragraph 271. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XI

### Violation of the State of Illinois False Claims Act, 740 Ill. Comp. Stat. § 175/1 *et seq.*

272. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

273. This is a civil action brought by Plaintiff-Relator on behalf of the State of Illinois, against AbbVie under the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/4(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 273. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

274. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval, in violation of 740 Ill. Comp. Stat. 175/3(a)(l)(A).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 274. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

275. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to get false or fraudulent claims paid or approved by the State of Illinois, or its political subdivisions, in violation of 740 Ill. Comp. Stat. I75/3(a)(I)(B).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 275. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

276. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to conceal, avoid or decrease an obligation to pay or transmit money to the State of Illinois, or its political subdivisions, in violation of 740 Ill. Comp. Stat. I75/3/(a)(I)(G).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 276. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

277. In addition, 305 Ill. Comp. Stat. 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Illinois Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 277, which merely state legal conclusions.

278. AbbVie violated 305 Ill. Comp. Stat. 5/8A-3(b) by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 278. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

279. AbbVie furthermore violated 740 Ill. Comp. Stat. 175/3(a) by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the Illinois Vendor Fraud and Kickback statute, compliance with which are express and implied conditions of payment for claims submitted to the State of Illinois.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 279. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

280. The State of Illinois, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 280. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

281. As a result of AbbVie's actions, as set forth above, the State of Illinois and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XI, and therefore no response is required to Paragraph 281. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XII

**Violation of the Illinois Insurance Frauds Prevention Act, 740 Ill. Comp. Stat. § 92/5, *et seq.***

282. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

283. AbbVie's use of the Ambassador Program was intended to induce Humira usage for patients insured by both public and private payors and insurance companies in Illinois.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XII, and therefore no response is required to Paragraph 283. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

284.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, offered and/or paid "remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer," acts which are expressly prohibited by the Illinois Insurance Frauds Prevention Act, Ill. Comp. Stat. 92/5.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XII, and therefore

no response is required to Paragraph 284.  To the extent an answer is required, AbbVie denies the

allegations in this paragraph.

285.    As a result of AbbVie's actions, as set forth above, the State of Illinois has been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XII, and therefore

no response is required to Paragraph 285.  To the extent an answer is required, AbbVie denies the

allegations in this paragraph.

## COUNT XIII

### Violation of the State of Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 *et seq.*

286.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

287.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Indiana, against AbbVie under the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-1 l-5.5-4(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and

therefore no response is required to Paragraph 287.  To the extent a response is required, AbbVie

denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

288.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented, or caused to be presented, and may still be presenting or causing to be

presented, false claims to the State of Indiana, or its political subdivisions, for payment or approval, in violation of Ind. Code § 5-11-5.5-2(b)(l).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 288.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

289.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to obtain payment or approval of false claims from the State of Indiana, or its political subdivisions, in violation of Ind. Code §5-11-5.5-2(b)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 289.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

290.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to avoid an obligation to pay or transmit money to the State of Indiana, or its political subdivisions, in violation of Ind. Code § 5-11-5.5- 2(b)(6).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 290.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

291.    Ind. Code § 12-17.6-6-12 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Indiana Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 291, which merely state legal conclusions.

292.    AbbVie violated Ind. Code § 12-17.6-6-12 by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 292. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

293. AbbVie further violated Indiana's False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Ind. Code § 12-17.6-6-12, compliance with which are express and implied conditions of payment for claims submitted to the State of Indiana.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 293. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

294. The State of Indiana, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 294. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

295. As a result of AbbVie's actions, as set forth above, the State of Indiana and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XIII, and therefore no response is required to Paragraph 295. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XIV

### Violation of the State of Iowa False Claims Act, Iowa Code § 685.1, *et seq.*

296. Plaintiff-Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

297.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Iowa against AbbVie under the State of Iowa False Claims Act, Iowa Code § 685.3(2)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 297.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

298.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of Iowa Code § 685.2(l)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 298.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

299.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Iowa, in violation of Iowa Code § 685.2(l)(b).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 299.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

300.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the state of Iowa, in violation of Iowa Code § 685.2(l)(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 300.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

301.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing and improperly avoiding or

decreasing obligations to pay or transmit money to the State of Iowa, in violation of Iowa Code § 685.2(l)(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 301.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

302.    AbbVie furthermore violated the Iowa False Claims Law, Iowa Code § 685.1, *et seq.* by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, compliance with which are express and implied conditions of payment for claims submitted to the State of Iowa.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 302.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

303.    The State of Iowa, unaware of the falsity of the claims and/or statements made or caused to be made by AbbVie, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 303.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

304.    As a result of AbbVie's actions, as set forth above, the State of Iowa has been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIV, and therefore no response is required to Paragraph 304.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XV

### Violation of the State of Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*

305.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

306.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Louisiana's medical assistance programs, against AbbVie under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 306.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

307.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims, in violation of La. Rev. Stat. Ann. § 46:43 8.3(A).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 307.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

308.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly engaged in misrepresentation, and may still be engaging in misrepresentation, to obtain, or attempt to obtain, payment from medical assistance programs funds, in violation of La. Rev. Stat. Ann. § 46:438.3(B).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 308.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

309.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly submitted, and may continue to submit, claims for goods, services or supplies which were medically unnecessary or which were of substandard quality or quantity, in violation of La. Rev. Stat. Ann. § 46:438.3(D).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 309.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

310.    In addition, La. Rev. Stat. Ann. § 46:438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes and/or rebates, directly or indirectly, overtly or covertly, in cash or in kind, for furnishing healthcare goods or services paid for in whole or in part by the Louisiana medical assistance programs.

**Answer**:  No response is required to the allegations in Paragraph 310, which merely state legal conclusions.

311.    AbbVie violated La. Rev. Stat. Ann.§ 46:438.2(A) by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 311.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

312.    AbbVie further violated La. Rev. Stat. Ann. § 46:438.3 by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and La. Rev. Stat. Ann.§ 46:438.2(A), compliance with which are express and implied conditions of payment for claims submitted to the State of Louisiana.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 312.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

313.    The State of Louisiana, its medical assistance programs, political subdivisions and/or the Department, unaware of the falsity of the claims and/or statements made by AbbVie, or their actions as set forth above, acted in reliance, and may continue to act in reliance, on the accuracy of AbbVie's claims and/or statements in paying for prescription drugs and prescription drug-related management services for medical assistance program recipients.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 313.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

314.     As a result of AbbVie's actions, as set forth above, the State of Louisiana, its medical assistance programs, political subdivisions and/or the Department have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XV, and therefore no response is required to Paragraph 314.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

**COUNT XVI**
**Violation of the State of Maryland False Health Claims Act,**
**Md. Code Ann. Health-Gen. § 2-601, *et seq.***

315.     Plaintiff-Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

316.     This is a civil action brought by Plaintiff-Relator on behalf of the State of Iowa against AbbVie under the State of Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-604(a)(l)(i).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 316.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

317.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of Md. Code Ann. Health-Gen. § 2-602(a)(l).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 317.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

318.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Iowa, in violation of Md. Code Ann. Health-Gen. § 2-602(a)(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 318. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

319. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements material to obligations to pay or transmit money to the State of Iowa, in violation of Md. Code Ann. Health-Gen. § 2-602(a)(7).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 319. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

320. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money to the State of Iowa, in violation of Md. Code Ann. Health-Gen. § 2-602(a)(8).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 320. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

321. In addition, MD Code Ann., Criminal Law, § 8-512, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Maryland Medicaid program.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 321. To the extent an answer is required, no response is required to the allegations in Paragraph 321, which merely state legal conclusions.

322. AbbVie violated the MD Code Ann., Criminal Law, § 8-512 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 322.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

323.    AbbVie further violated the Maryland False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Section 8-512 of Maryland's Criminal Law, compliance with which are express and implied conditions of payment for claims submitted to the State of Maryland.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 323.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

324.    The State of Maryland, unaware of the falsity of the claims and/or statements made or caused to be made by AbbVie, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related management services for recipients of state-funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 324.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

325.    As a result of AbbVie's actions, as set forth above, the State of Maryland has been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVI, and therefore no response is required to Paragraph 325.  To the extent an answer is required, AbbVie denies the allegations in paragraph.

## COUNT XVII

### Violation of the Commonwealth of Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A *et seq.*

326.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

327.    This is a civil action brought by Plaintiff-Relator on behalf of the Commonwealth of Massachusetts, against AbbVie under the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12 § 5C(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 327. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

328.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval, in violation of Mass. Gen. Laws ch. 12 § 5B(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 328. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

329.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval of claims by the Commonwealth of Massachusetts, or its political subdivisions, in violation of Mass. Gen. Laws ch. 12 § 5B(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 329. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

330.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts, or its political subdivisions, in violation of Mass. Gen. Laws ch. 12 § 5B(8).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 330.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

331.    In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 331, which merely state legal conclusions.

332.    AbbVie violated Mass. Gen. Laws Ann. Chap. 118E § 41 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 332.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

333.    AbbVie further violated Mass. Gen. Laws Ann. Chap. 12 § 5B by their deliberate and systematic violation of federal and state laws, including the FDC A, federal Anti-Kickback Act, Mass. Gen. Law Ann. Chap. 118E § 41, compliance with which are express and implied conditions of payment for claims submitted to the State of Massachusetts.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 333.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

334.    The Commonwealth of Massachusetts, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and therefore no response is required to Paragraph 334.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

335.    As a result of AbbVie's actions, as set forth above, the Commonwealth of Massachusetts and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVII, and

therefore no response is required to Paragraph 335.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

## COUNT XVIII

### Violation of the State of Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*

336.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

337.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Michigan, against AbbVie under the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.610a(l).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and

therefore no response is required to Paragraph 337.  To the extent a response is required, AbbVie

denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

338.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, false statements or false representations of material facts in an application for Medicaid benefits, in violation of Mich. Comp. Laws § 400.603(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and

therefore no response is required to Paragraph 338.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

339.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made false statements or false representations of a material fact for use in determining rights to a Medicaid benefit, in violation of Mich. Comp. Laws § 400.603(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 339. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

340. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly concealed or failed to disclose, and may still be concealing or failing to disclose, an event affecting its initial or continued right to receive a Medicaid benefit, or the initial or continued right of any other person on whose behalf AbbVie have applied for or is receiving a benefit with intent to obtain a benefit to which AbbVie were not entitled or in an amount greater than that to which AbbVie were entitled, in violation of Mich. Comp. Laws § 400.603(3).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 340. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

341. AbbVie, in possession of facts under which it is aware or should be aware of the nature of their conduct and that their conduct is substantially certain to cause the payment of a Medicaid benefit, knowingly made, presented or caused to be made or presented, and may still be presenting or causing to be presented, to an employee or officer of the State of Michigan, or its political subdivisions, false claims under the Social Welfare Act, Mich. Comp. Laws §§ 400.1-400.122, in violation of Mich. Comp. Laws § 400.607(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 341. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

342. In addition, Mich. Comp. Laws Ann. § 400.604 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Michigan Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 342, which merely state legal conclusions.

343. AbbVie violated Mich. Comp. Laws Ann. § 400.604 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 343.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

344.    AbbVie further violated Michigan Comp. Laws. Serv. § 400.607 by their deliberate and systematic violation of federal and state laws, including the FDCA, the federal Anti-Kickback Act, and Mich. Comp. Laws Ann. § 400.604, compliance with which are express and implied conditions of payment for claims submitted to the State of Michigan.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 344.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

345.    The State of Michigan, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of Medicaid.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 345.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

346.    As a result of AbbVie's actions, as set forth above, the State of Michigan and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XVIII, and therefore no response is required to Paragraph 346.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XIX

**Violation of the State of Minnesota False Claims Act, Minn. Stat. § 15C.01, *etseq.***

347.    Plaintiff-Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

348.     This is a civil action brought by Plaintiff-Relator on behalf of the State of Minnesota and its political subdivisions against AbbVie under the State of Minnesota False Claims Act, Minn. Stat. § 15C.05(a).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 348.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

349.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval to an officer or employee of the state Minnesota or a political subdivision thereof, in violation of Minn. Stat. § 15C.02(a)(1).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 349.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

350.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Minnesota or a political subdivision thereof, in violation of Minn. Stat. § 15C.02(a)(2).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 350.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

351.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Minnesota, in violation of Minn. Stat. § 15C.02(a)(7).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 351.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

352.    In addition, Minn. Stat. § 256B.0914, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Minnesota Medicaid program.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 352.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

353.    AbbVie violated Minn. Stat. § 256B.0914 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 353.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

354.    AbbVie further violated the Minnesota False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Minn. Stat. § 256B.0914, compliance with which are express and implied conditions of payment for claims submitted to the State of Minnesota.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 354.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

355.    The State of Minnesota, unaware of the falsity of the claims and/or statements made or caused to be made by AbbVie, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 355.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

356.    As a result of AbbVie's actions, as set forth above, the State of Minnesota has been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XIX, and therefore no response is required to Paragraph 356.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XX

### Violation of the State of Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*

357.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

358.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Montana against, AbbVie under the Montana False Claims Act, Mont. Code Ann. § 17-8-406(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 358.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

359.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Montana, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Mont. Code Ann. § 17-8-403(l)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 359.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

360.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Montana, or its political subdivisions, in violation of Mont. Code Ann. § 17-8-403(l)(b).

**<u>Answer</u>**: AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 360. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

361.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Montana, or its political subdivisions, in violation of Mont. Code Ann. § 17-8-403(l)(g).

**<u>Answer</u>**: AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 361. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

362.    In addition, MCA § 45-6-313 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Montana Medicaid program.

**<u>Answer</u>**: No response is required to the allegations in Paragraph 362, which merely state legal conclusions.

363.    AbbVie violated MCA § 45-6-313 by engaging in the conduct alleged herein.

**<u>Answer</u>**: AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 363. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

364.    AbbVie furthermore violated the Montana False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDC A, federal Anti-Kickback Act and MCA § 45-6-313, compliance with which are express and implied conditions of payment for claims submitted to the State of Montana.

**<u>Answer</u>**: AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 364. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

365.    The State of Montana, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 365.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

366.    As a result of AbbVie's actions, as set forth above, the State of Montana and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XX, and therefore no response is required to Paragraph 366.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXI

### Violation of the State of Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*

367.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

368.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Nevada, against AbbVie under the Nevada False Claims Act, Nev. Rev. Stat. § 357.080(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 368.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

369.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false claims for payment or approval, in violation of Nev. Rev. Stat. § 357.040(l)(a).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 369. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

370. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval of false claims, in violation of Nev. Rev. Stat. § 357.040(l)(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 370. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

371. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Nevada, or its political subdivisions, in violation of Nev. Rev. Stat. § 357.040(l)(g).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 371. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

372. In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 372, which merely state legal conclusions.

373. AbbVie violated N.R.S. § 422.560 by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 373. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

374.    AbbVie further violated N.R.S. § 357.040(1) by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and N.R.S. § 422.560, compliance with which are express and implied conditions of payment for claims submitted to the State of Nevada.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 374.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

375.    The State of Nevada, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 375.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

376.    As a result of AbbVie's actions, as set forth above, the State of Nevada and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXI, and therefore no response is required to Paragraph 376.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

<u>**COUNT XXII**</u>
**Violation of the State of New Jersey False Claims Act,**
**N.J. Stat. Ann. § 2A:32C-1 *et seq.***

377.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

378.    This is a civil action brought by Plaintiff-Relator on behalf of the State of New Jersey, against AbbVie pursuant to the New Jersey Fraud False Claims Act, N.J. Stat. Ann. § 2A:32C-5(b).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 378.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

379.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented or caused to be presented, and may still be presenting or causing to be presented, to an employee, officer or agent of the State of New Jersey, or to any contractor, grantee, or other recipient of State funds, false or fraudulent claims for payment or approval, in violation of N.J. Stat. Ann. § 2A:32C-3(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 379.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

380.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of New Jersey, or its political subdivisions, in violation of N.J. Stat. Ann. § 2A:32C-3(b).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 380.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

381.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Jersey, or its political subdivisions, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 381.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

382.    In addition, N.J.S.A. § 30:4D-17 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the New Jersey Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 382, which merely state legal conclusions.

383.    AbbVie violated N.J.S.A. § 30:4D-17 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 383.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

384.    AbbVie further violated the New Jersey False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and N.J.S.A. § 30:4D-17, compliance with which are express and implied conditions of payment for claims submitted to the State of New Jersey.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 384.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

385.    The State of New Jersey, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of Medicaid.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 385.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

386.    As a result of AbbVie's actions, as set forth above, the State of New Jersey and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXII, and therefore no response is required to Paragraph 386.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXIII

### Violation of the State of New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1, *et seq.*

387.    Plaintiff-Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

388.    This is a civil action brought by Plaintiff-Relator on behalf of the State of New Mexico against AbbVie under the State of New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-7(B).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and

therefore no response is required to Paragraph 388.  To the extent a response is required, AbbVie

denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

389.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented or caused to be presented, and may still be presenting or causing to be presented, a false or fraudulent claim for payment under the Medicaid program, in violation of N.M. Stat. Ann. § 27- 14-4(A).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and

therefore no response is required to Paragraph 389.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

390.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain false or fraudulent claims under the Medicaid program paid for or approved by the state, in violation of N.M. Stat. Ann. § 27-14-4(C).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and

therefore no response is required to Paragraph 390.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

391.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or

caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Mexico or one of its political subdivisions, relative to the Medicaid program, in violation of N.M. Stat. Ann. § 27-14-4(E).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and therefore no response is required to Paragraph 391. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

392. In addition, N.M. Stat. Ann. § 30-44-7 *et seq.* prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the New Mexico Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 392, which merely state legal conclusions.

393. AbbVie violated N.M. Stat. Ann. § 30-44-7 *et seq.* by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and therefore no response is required to Paragraph 393. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

394. AbbVie further violated N.M. Stat. Ann. § 27-14-1 *et seq.* by their deliberate and systematic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, compliance with which are express and implied conditions of payment for claims submitted to the State of New Mexico.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and therefore no response is required to Paragraph 394. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

395. The State of New Mexico, or its political subdivisions, unaware of the falsity of the claims and/or statements made or caused to be made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and therefore no response is required to Paragraph 395.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

396.    As a result of AbbVie's actions, as set forth above, the State of New Mexico or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIII, and therefore no response is required to Paragraph 396.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

**COUNT XXIV**

**Violation of the State of New York False Claims Act,<br>N.Y. State Fin. Law § 187 *et seq.***

397.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

398.    This is a civil action brought by Plaintiff-Relator on behalf of the State of New York, against AbbVie under the New York False Claims Act, N.Y. State Fin. Law § 190(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and therefore no response is required to Paragraph 398.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

399.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval, in violation of N.Y. State Fin. Law § 189(l)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and therefore no response is required to Paragraph 399.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

400.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to false or fraudulent claims, in violation of N.Y. State Fin. Law § 189(l)(b).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and

therefore no response is required to Paragraph 400.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

401.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to an obligation to pay or transmit money to the State of New York, or its political subdivisions, in violation of N.Y. State Fin. Law § 189( 1 )(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and

therefore no response is required to Paragraph 401.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

402.    In addition, New York law prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the New York Medicaid program. NY Soc. Serv. § 366-d.

**Answer**:  No response is required to the allegations in Paragraph 402, which merely state legal

conclusions.

403.    AbbVie violated NY Soc. Serv. § 366-d by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and

therefore no response is required to Paragraph 403.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

404.    AbbVie further violated the New York State False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, the federal Anti- Kickback Act, and NY Soc. Serv. § 366-d, compliance with which are express and implied conditions of payment for claims submitted to the State of New York.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and therefore no response is required to Paragraph 404. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

405. The State of New York, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and therefore no response is required to Paragraph 405. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

406. As a result of AbbVie's actions, set forth above, the State of New York and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXIV, and therefore no response is required to Paragraph 406. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXV
### Violation of the State of North Carolina False Claims Act,
### N.C. Gen. Stat. § 1-605 *et seq.*

407. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

408. This is a civil action brought by Plaintiff-Relator on behalf of the State of North Carolina, against AbbVie under the North Carolina False Claims Act, N.C. Gen. Stat. § l-608(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and therefore no response is required to Paragraph 408. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

409.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval, in violation of N.C. Gen. Stat. § l-607(a)(l).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and

therefore no response is required to Paragraph 409.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

410.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to false or fraudulent claims, in violation of N.C. Gen. Stat. § 1-607(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and

therefore no response is required to Paragraph 410.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

411.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of North Carolina, or its political subdivisions, in violation of N.C. Gen. Stat. § 1-607(a)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and

therefore no response is required to Paragraph 411.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

412.     In addition, N.C. Gen. Stat. Ann. § 108A-63 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the North Carolina Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 412, which merely state legal

conclusions.

413.     AbbVie violated N.C. Gen. Stat. Ann. § 108A-63 by engaging in the conduct alleged herein.

97

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and therefore no response is required to Paragraph 413.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

414.    AbbVie further violated the North Carolina False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDC A, federal Anti-Kickback Act and N.C. Gen. Stat. Ann. § 108A-63, compliance with which are express and implied conditions of payment for claims submitted to the State of North Carolina.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and therefore no response is required to Paragraph 414.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

415.    The State of North Carolina, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and therefore no response is required to Paragraph 415.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

416.    As a result of AbbVie's actions, as set forth above, the State of North Carolina and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXV, and therefore no response is required to Paragraph 416.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXVI

### Violation of the State of Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, § 5053 *et seq.*

417.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

418. This is a civil action brought by Plaintiff-Relator on behalf of the State of Oklahoma, against AbbVie pursuant to the Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, § 5053.2(B)(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 418. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

419. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Oklahoma, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Okla. Stat. tit. 63, § 5053.1(B)(1).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 419. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

420. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, false records or statements to get false or fraudulent claims paid or approved by the State of Oklahoma, or its political subdivisions, in violation of Okla. Stat. tit. 63, § 5053.1(B)(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 420. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

421. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Oklahoma, or its political subdivisions, in violation of Okla. Stat. tit. 63, § 5053.1(B)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 421.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

422.    In addition, Okla. Stat. Ann. tit. 56, § 1005 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Oklahoma Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 422, which merely state legal conclusions.

423.    AbbVie violated Okla. Stat. Ann. tit. 56, § 1005 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 423.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

424.    AbbVie furthermore violated the Oklahoma Medicaid False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Okla. Stat. Ann. tit. 56, § 1005, compliance with which are express and implied conditions of payment for claims submitted to the State of Oklahoma. The State of Oklahoma, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of Medicaid.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 424.  To the extent an answer is required, AbbVie denies the allegations in this Paragraph.

425.    As a result of AbbVie's actions, as set forth above, the State of Oklahoma and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVI, and therefore no response is required to Paragraph 425.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXVII

**Violation of the State of Rhode Island False Claims Act,**
**R.L Gen. Laws § 9-1.1-1 *et seq.***

426.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein

427.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Rhode Island, against AbbVie pursuant to the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-4(b).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and therefore no response is required to Paragraph 427.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

428.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Rhode Island or a member of Rhode Island's National Guard, false or fraudulent claims for payment or approval, in violation of R.I. Gen. Laws § 9-1.1- 3(a)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and therefore no response is required to Paragraph 428.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

429.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, false records or statements to get false or fraudulent claims paid or approved by the State of Rhode Island, or its political subdivisions, in violation of R.I. Gen. Laws § 9-l.l-3(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and therefore no response is required to Paragraph 429.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

430.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Rhode Island, or its political subdivisions, in violation of R.I. Gen. Laws § 9-l.l-3(a)(7).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and

therefore no response is required to Paragraph 430.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

431.     In addition, R.I. Gen. Laws § 40-8.2-9 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Rhode Island Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 431, which merely state legal

conclusions.

432.     AbbVie violated R.I. Gen. Laws § 40-8.2-9 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and

therefore no response is required to Paragraph 432.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

433.     AbbVie further violated the Rhode Island False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and R.I. Gen. Laws § 40-8.2-9, compliance with which are express and implied conditions of payment for claims submitted to the State of Rhode Island.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and

therefore no response is required to Paragraph 433.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

434.     The State of Rhode Island, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of Medicaid.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and therefore no response is required to Paragraph 434. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

435. As a result of AbbVie's actions, as set forth above, the State of Rhode Island and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVII, and therefore no response is required to Paragraph 435. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXVIII
### Violation of the State of Tennessee Medicaid False Claims Act,
### Tenn. Code Ann. § 71-5-181 *et seq.*

436. Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**: AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

437. This is a civil action brought by Plaintiff-Relator on behalf of the State of Tennessee, against AbbVie under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-183(b).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and therefore no response is required to Paragraph 437. To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

438. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to the State of Tennessee, or its political subdivisions, false or fraudulent claims for payment under the Medicaid program,, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and therefore no response is required to Paragraph 438. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

439.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false or fraudulent records or statements to get false or fraudulent claims under the Medicaid program paid for or approved by the State of Tennessee, or its political subdivisions, in violation of Tenn. Code Ann. § 71-5-182(a)(l)(B).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and

therefore no response is required to Paragraph 439.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

440.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false or fraudulent records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Tennessee, or its political subdivisions, relative to the Medicaid program, in violation of Tenn. Code Ann. § 71-5-182(a)(l)(D).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and

therefore no response is required to Paragraph 440.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

441.    AbbVie violated Tenn. Code Ann. § 71-5-182(a)(1) by their deliberate and systematic violation of federal and state laws, including the FDCA and Anti-Kickback Act, compliance with which are express and implied conditions of payment for claims submitted to the State of Tennessee.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and

therefore no response is required to Paragraph 441.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

442.    The State of Tennessee, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of the Medicaid program.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and

therefore no response is required to Paragraph 442.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

443.     As a result of AbbVie's actions, as set forth above, the State of Tennessee and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXVIII, and therefore no response is required to Paragraph 443.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

**COUNT XXIX**
**Violation of the State of Texas Medicaid Fraud Prevention Act,**
**Tex. Hum. Res. Code Ann. § 36.001** *et seq.*

444.     Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

445.     This is a civil action brought by Plaintiff-Relator on behalf of the State of Texas against, AbbVie under the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.101(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 445.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

446.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, false statements or misrepresentations of material fact that permitted AbbVie to receive a benefit or payment under the Medicaid program that was not authorized or that was greater than the benefit or payment that was authorized, in violation of Tex. Hum. Res. Code Ann. § 36.002(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 446.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

447.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly concealed or failed to disclose, or caused to be concealed or not disclosed — and may still be concealing or failing to disclose, or causing to be concealed or not disclosed — information that

permitted AbbVie to receive a benefit or payment under the Medicaid program that was not authorized or that was greater than the payment that was authorized, in violation of Tex. Hum. Res. Code Ann. § 36.002(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 447.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

448.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, caused to be made, induced or sought to induce, and may still be making, causing to be made, inducing or seeking to induce, false statements or misrepresentations of material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid program, in violation of Tex. Hum. Res. Code Ann. § 36.002(4)(B).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 448.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

449.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, and may still be making, claims under the Medicaid program for services or products that were inappropriate, in violation of Tex. Hum. Res. Code Ann. § 36.002(7)(C).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 449.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

450.    In addition, § 36.002(5) imposes liability on one who "knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program."

**Answer**:  No response is required to the allegations in Paragraph 450, which merely state legal conclusions.

451.    AbbVie violated § 36.002(5) by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 451.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

452.    AbbVie violated Hum. Res. Code § 36.002 by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and § 36.002(5), compliance with which are express and implied conditions of payment for claims submitted to the State of Texas.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 452.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

453.    The State of Texas, or it political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 453.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

454.    As a result of AbbVie's actions, as set forth above, the State of Texas and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXIX, and therefore no response is required to Paragraph 454.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXX

### Violation of the State of Vermont False Claims Act
### 32 V.S.A. § 630 *et seq.*

455.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

456.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Vermont, against AbbVie under the State of Vermont False Claims Act, 32 V.S.A. § 632(b)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 456.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

457.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Vermont, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of 32 V.S.A. § 631(a)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 457.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

458.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Vermont, or its political subdivisions, in violation of 32 V.S.A. § 631(a)(2).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 458.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

459.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Vermont, or its political subdivisions, in violation of 32 V.S.A. § 631(a)(9).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 459.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

460.    In addition, 33 V.S.A. § 141(d) prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Vermont Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 460, which merely state legal conclusions.

461.    AbbVie violated 33 V.S.A. § 141(d) by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 461.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

462.    AbbVie furthermore violated Vermont's False Claims Act, §631(a), by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and 33 V.S.A. § 141(d), compliance with which are express and implied conditions of payment for claims submitted to the State of Vermont.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 462.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

463.    The State of Vermont, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 463.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

464.    As a result of AbbVie's actions, as set forth above, the State of Vermont and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XXX, and therefore no response is required to Paragraph 464.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXXI

### Violation of the Commonwealth of Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*

465.   Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

466.   This is a civil action brought by Plaintiff-Relator on behalf of the Commonwealth of Virginia, against AbbVie under the Commonwealth of Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.5(A).

**Answer**:   AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 466.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

467.   AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the Commonwealth of Virginia, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 467.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

468.   AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Commonwealth of Virginia, or its political subdivisions, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 468. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

469. AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Virginia, or its political subdivisions, in violation of Va. Code Ann. § 8.01-216.3(A)(7).

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 469. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

470. In addition, Va. Code Ann. § 32.1-315 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Virginia Medicaid program.

**Answer**: No response is required to the allegations in Paragraph 470, which merely state legal conclusions.

471. AbbVie violated Va. Code Ann. § 32.1-315 by engaging in the conduct alleged herein.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 471. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

472. AbbVie furthermore violated Virginia's Fraud Against Tax Payers Act, § 8.01-216.3a, by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Va. Code Ann. § 32.1-315, compliance with which are express and implied conditions of payment for claims submitted to the Commonwealth of Virginia.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 472. To the extent an answer is required, AbbVie denies the allegations in this paragraph.

111

473.     The Commonwealth of Virginia, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 473.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

474.     As a result of AbbVie's actions, as set forth above, the Commonwealth of Virginia and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXI, and therefore no response is required to Paragraph 474.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXXII

### Violation of the State of Washington Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.005, *et seq.*

475.     Plaintiff-Relator incorporates by reference the preceding paragraphs of the Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set forth fully herein.

476.     This is a civil action brought by Plaintiff-Relator on behalf of the State of Washington against AbbVie under the Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.050(1).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 476.  To the extent a response is required, AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

477.     AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims for payment or approval under the state of Washington Medicaid program, in violation of Wash. Rev. Code § 74.66.020(l)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 477.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

478.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims paid or approved by the state of Washington Medicaid program, in violation of Wash. Rev. Code § 74.66.020(l)(b).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 478.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

479.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements material to obligations to pay or transmit money or property to the state of Washington Medicaid program, in violation of Wash. Rev. Code § 74.66.020(l)(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 479.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

480.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, concealed or improperly avoided or decreased, and may still be concealing or improperly avoiding or decreasing, obligations to pay or transmit money or property to the state of Washington Medicaid program, in violation of Wash. Rev. Code § 74.66.020(l)(g).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 480.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

481.    In addition, Wash. Rev. Code 74.09.240, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Washington Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 481, which merely state legal conclusions.

482.    AbbVie violated Wash. Rev. Code 74.09.240 by engaging in the conduct described herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 482.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

483.    AbbVie furthermore violated the Washington Medicaid Fraud Act, Wash. Rev. Code 74.66.005, *et seq.*, by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Wash. Rev. Code 74.09.240, compliance with which are express and implied conditions of payment for claims submitted to the State of Washington.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 483.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

484.    The State of Washington, unaware of the falsity of the claims and/or statements made or caused to be made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and drug-related management services for recipients of state-funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 484.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

485.    As a result of AbbVie's actions, as set forth above, the State of Washington and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXII, and therefore no response is required to Paragraph 485.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

## COUNT XXXIII

### Violation of the State of Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931 *et seq.*

486.    Plaintiff-Relator incorporates herein by reference the preceding paragraphs of this Complaint as though fully set forth herein.

**Answer**:  AbbVie incorporates its responses to each and every allegation set forth above as if set

forth fully herein.

487.    This is a civil action brought by Plaintiff-Relator on behalf of the State of Wisconsin, against AbbVie under the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931(5)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and

therefore no response is required to Paragraph 487.  To the extent a response is required, AbbVie

denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

488.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to any officer, or employee, or agent of the State of Wisconsin, or its political subdivisions, false or fraudulent claims for medical assistance, in violation of Wis. Stat. § 20.931(2)(a).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and

therefore no response is required to Paragraph 488.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

489.    AbbVie, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to obtain approval or payment of false claims for medical assistance, in violation of Wis. Stat. § 20.931(2)(b).

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and

therefore no response is required to Paragraph 489.  To the extent an answer is required, AbbVie

denies the allegations in this paragraph.

490.    In addition, Wis. Stat. Ann. § 49.49 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Wisconsin Medicaid program.

**Answer**:  No response is required to the allegations in Paragraph 490, which merely state legal conclusions.

491.    AbbVie violated Wis. Stat. Ann. § 49.49 by engaging in the conduct alleged herein.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and therefore no response is required to Paragraph 491.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

492.    AbbVie further violated the Wisconsin False Claims Act by their deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Wis. Stat. Ann. § 49.49, compliance with which are express and implied conditions of payment for claims submitted to the State of Wisconsin.

**Answer**: AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and therefore no response is required to Paragraph 492.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

493.    The State of Wisconsin, or its political subdivisions, unaware of the falsity of the claims and/or statements made by AbbVie, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state funded health insurance programs.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and therefore no response is required to Paragraph 493.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

494.    As a result of AbbVie's actions, as set forth above, the State of Wisconsin and/or its political subdivisions have been, and may continue to be, severely damaged.

**Answer**:  AbbVie states that, on November 30, 2020, the Court dismissed Count XXXIII, and therefore no response is required to Paragraph 494.  To the extent an answer is required, AbbVie denies the allegations in this paragraph.

116

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Relator prays for judgment against AbbVie as follows:

A.     That AbbVie be ordered to cease and desist from submitting any more false claims, or further violating the FC A and the State *Qui Tam* Statutes;

B.     That judgment be entered in the United States of America's favor and against AbbVie in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a)(1), plus a civil penalty of not less $5,500 or more than $11,000 per claim as provided by 31 U.S.C. § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

C.     That judgment be entered in the *Qui Tam* States' favor and against Defendant in the amount of the damages sustained by the State *Qui Tam* Statutes multiplied as provided for in the State *Qui Tam* Statutes, plus civil penalties in the ranges provided by the State *Qui Tam* Statutes;

D.     That Plaintiff-Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(D), Cal. Gov't Code § 12652(G), Colo. Rev. Stat. § 25.5-4-306(4), Conn. Gen. Stat. § 17b-301e, Del. Code Ann. Tit. 6, § 1205, D.C. Code Ann. § 2-381.03(F)(1), Fla. Stat. § 68.085, Ga. Code Ann. § 49-4-168.2, Haw. Rev. Stat. § 661-27, 740 Ill. Comp. Stat. § 175/4(D), 740 Ill. Comp. Stat. 92/25, Ind. Code § 5-1 l-5.5-6(A), Iowa Code § 685.3, La. Rev. Ann. Stat. § 46:439.4, Md. Code Ann. Health-Gen. § 2-605, Mass. Ann. Laws Ch. 12, § 5F, Mich. Comp. Laws Serv. § 400.610a(9), Minn. Stat. § 15C.13, Mont. Code Ann. § 17-8-410, Nev. Rev. Stat. § 357.220, N.J. Stat Ann. § 2A:32C-7, N.M. Stat. Ann. § 27-14-9, N.Y. Fin. Law § 190(6), N.C. Gen. Stat. § 1-610, Okla. Stat. Tit. 63, § 5053.4, R.I. Gen. Laws § 9-l,l-4(D), Tenn. Code Ann. § 71-5-183(D)(1)(A), Tex. Hum. Res. Code § 36.110, the Vermont False Claims Act, 32 V.S.A. § 630 *et seq.,* Va. Code Ann. § 8.01-216.7, Wash. Rev. Code § 74.66.070, and Wis. Stat. §20.931(11);

E.     That Defendants be ordered to disgorge all sums by which it has been enriched unjustly by its wrongful conduct; and

F.     That judgment be granted for Plaintiff-Relator for all costs, including, but not limited to, court costs, litigation costs, expert fees, and all attorneys' fees incurred by Plaintiff- Relator in the prosecution of this suit; and

G.     That Plaintiff-Relator be granted such other and further relief as the Court deems just and proper.

**Answer**: AbbVie denies that Relator is entitled to the relief he has requested, or that he is entitled to any relief at all.

117

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(a), Plaintiff-Relator hereby demands a trial by jury of all issues so triable.

**Answer**: AbbVie denies that Relator has raised any triable issues. To the extent that any issues need to be tried, AbbVie admits that they should be tried before a jury.

\* \* \*

WHEREFORE, AbbVie denies any and all allegations of Relator's Amended Complaint not expressly admitted herein, including but not limited to any and all of the headings appearing in the Amended Complaint, to the extent such headings are construed to be allegations.

## AFFIRMATIVE DEFENSES

Without undertaking any burden of proof not otherwise assigned to it by law, AbbVie asserts the following separate and affirmative defenses:

### First Affirmative Defense

Relator's claims, in whole or in part, fail to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Court lacks subject-matter jurisdiction over Relator's claims, in whole or in part, under the public disclosure bar, 31 U.S.C. § 3730(e)(4).

### Third Affirmative Defense

Relator's claims are barred, in whole or in part, because the federal and state governments had actual or constructive knowledge of and/or acquiescence to the relevant facts and, therefore, AbbVie's claims are not false or knowingly false, and, alternatively, the governments were not defrauded.

### Fourth Affirmative Defense

Relator's claims are barred, in whole or in part, by the doctrine of consent and/or ratification, including by the failure of federal and state governments to take any action despite their knowledge of the alleged conduct.

### Fifth Affirmative Defense

Relator's claims are barred in whole or in part by the doctrine of estoppel or waiver.

### Sixth Affirmative Defense

Relator's claims are barred, in whole or in part, by the doctrines of laches and/or undue delay.

AbbVie has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely upon such other affirmative defenses as may become available or apparent during discovery proceedings. AbbVie further reserves the right to amend its Answer and/or affirmative defenses accordingly, and/or to delete affirmative defenses that AbbVie determines during the course of subsequent discovery are not applicable.

\* \* \*

WHEREFORE, AbbVie respectfully requests that the Court enter judgment in its favor on all claims alleged in the Amended Complaint; award AbbVie the costs, including attorneys' fees, incurred in defending this action; and grant AbbVie such other relief as this Court deems just and proper.

Dated:  January 28, 2021

Respectfully submitted,

*/s/ Brenton A. Rogers*

Andrew A. Kassof, P.C.
Elizabeth S. Hess, P.C.
Brenton A. Rogers, P.C.
Britt Cramer
Anne K.H. Reser
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
akassof@kirkland.com
ehess@kirkland.com
brogers@kirkland.com
britt.cramer@kirkland.com
anne.reser@kirkland.com
Telephone: 312-862-2000
Facsimile: 312-862-2200

*Counsel for Defendant*
*AbbVie Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 28, 2021, the foregoing was electronically filed with the

Clerk of Court using the CM-ECF system which will send notification of such filing to all counsel

of record.

*/s/ Brenton A. Rogers*
Brenton A. Rogers
